In The United States District Court For The Middle District Of Pennsylvania

William Mayo,

      Plaintiff,

    v

John E. Wetzel, is being
sued in both his indi-
vidual and official
capacities, as the
Secretary of the Penn-
sylvania Department of
Corrections,

      Defendant.

Civil Action NO. 1:18cv878

Hon. _____

**FILED
SCRANTON**

APR 23 2018

Verified Complaint For
Declaratory, Damages
and Injunctive Relief

PER ___ Amo
DEPUTY CLERK

Jury Trial Demanded

## Introduction

This is a Civil Rights action being filed, by William Mayo pro se liti-
gant, a 39 year old prisoner, that's mentally impaired, confined at
the State Correctional Institution at Smithfield ("SCI Smithfield"),
in the Restricted Housing Unit ("RHU"), in solitary confinement for
twentynine (29) consecutive months on the Restricted Release
List ("RRL") whom would like to initiate this action pursuant to
42 U.S.C. § 1983 for declaratory, damages and injunction relief for
denial of due process and cruel and unusual conditions of con-
finement, in violation to both the Eighth and Fourteenth amend-
ment(s) to the United States Constitution.

(1)

Plaintiff was initially placed in solitary confinement on November 19, 2015 for his alleged involvement in a altercation that transpired at SCI Greene and was transferred to SCI Fayette shortly there-after, Plaintiff then spent approximately twenty five (25) consecutive months in solitary confinement at SCI Fayette's RHU and was transferred to SCI Smithfield on January 9, 2018.

Since Plaintiff's confinement in solitary he's caught several misconduct reports— all in accordance with Plaintiff's deteriorated mental stability, being confined in virtual isolation in a 7 X 12 cell for 23-24 hours per day, 7 days a week and being denied adequate mental health treatment, inwhich has also caused Plaintiff to display suicidal behavior and impose a significant hardship on Plaintiff in relation to the ordinary incidents of prison life.

Despite Plaintiff being on RRL, he was never giving any formal notice, a due process hearing nor do the Department of Corrections ("DOC") have a pre-established appellate remedy where Plaintiff, and other prisoners' thats similarly situated, can request redress.

## Jurisdiction

1. This court has jurisdiction over Plaintiff's claims in violation of Plaintiff's Federal Constitutional Rights pursuant to 42 U.S.C.§ 1331 (1) 1343.

2. This Court also has supplemental jurisdiction over Plaintiff's state law tort claims pursuant to 28 U.S.C. § 1367.

## Venue

3. This Court is the appropriate venue pursuant to 28 U.S.C. § 1391 (b)(2) granted the allegations and omissions' being asserted occurred within the Pennsylvania Department of Corrections.

## Parties

4. Plaintiff, William Mayo pro se litigant, is a 39 year old prisoner that's mentally impaired, whom been held in solitary confinement for twentynine (29) consecutive months (since November 19, 2015) at the State Correctional Institutions of Greene, Fayette and Smithfield.

5. Defendant John E. Wetzel, is the Secretary of the Pennsylvania Department of Corrections, whom job entails being responsible for the overall oversight, operation and administration of the Commonwealth's correctional system, inwhich he receives regular reports' regarding conditions in all the state Prisons (within Pennsylvania) and placement and/or removal of prisoner's on RRL, he is being sued in both his individual and official capacities.

(3)

Facts

6. The Pennsylvania Department of Corrections–including SCI Greene, SCI Fayette and SCI Smithfield, has two (2) types of housing: (1) general population and (2) the restricted housing units (hereafter "solitary confinement").

7. Plaintiff has consecutive been held in solitary confinement for the past twentynine (29) months.

8. From November 20, 2015 to January 9, 2018, Plaintiff was held in solitary confinement at SCI Fayette.

9. From January 9, 2018 up until initiating the foregoing ~~complete~~ complaint Plaintiff is being held in solitary confinement at SCI Smithfield.

10. For the past twentynine (29) consecutive months, Plaintiff has been confined to cells' that measures approximately 7 X 12 feet.

11. For the past twentynine (29) consecutive months, Plaintiff has been in solitary confinement, despite being on the active mental health roster and taking two (2) different psyche medications daily.

12. For the past twentynine (29) consecutive months, Plaintiff has been denied any type of therapeutic treatment in spite of his countless formal requests.'   (4)

13. On August 1, 2016 Plaintiff submitted a grievance (# 636664) to the coordinator at SCI Fayette (Ms. Rhonda A. House) to report that Plaintiff's lengthy confinement in solitary is starting to weigh on Plaintiff's mental stability and requested if a treatment plan could be put together.

14. On June 10, 2016 upon Plaintiff's Counselor (at SCI Fayette) doing his weekly tour to the unit, Plaintiff requested if he could put him in for a disciplinary custody timecut, so Plaintiff can be released to general population (pursuant to Plaintiff's misconduct free behavior).

15. Plaintiff's Counselor formal reply was "that [Plaintiff] have been placed on RRL".

16. On June 13, 2016 approximately three (3) days later, Plaintiff submitted a appeal to the Chief Hearing Examiner's Office-notifying him that: Plaintiff his subsequently been placed on RRL without being provided with either any formal notice nor due process hearing

17. On June 22, 2016, Plaintiff received his appellate response (from the Chief Hearing Examiner's Office)(referred "as a letter")notifying Plaintiff that placement on RRL don't have a appellate remedy established where redress could be requested and the fact that

Plaintiff wasn't awarded a due process hearing wasn't acknowledged despite it being the basis of the appeal.

18. The abovementioned appellate response was further asserted in accordance with the Institutional Policy (the DC-ADM 802 administrative Custody Procedures)(inwhich is RRL controlling authority), however reflected that Plaintiff's due process was indeed violated granted he wasn't placed on administrative custody until October 30, 2017.

19. On June 15, 2017 Plaintiff was admitted to a Psychiatric Observation Cell ("POC") that's located off the unit and inside of SCI Fayette's Medical Department (for what the Psyche Department referred to "as a nervous break down") predicated from Plaintiff's deteriorated mental stability.

20. Every ninety (90) days consecutively after Plaintiff's Counselor notified Plaintiff that Defendant Wetzel subsequently placed him on RRL, Plaintiff attended every scheduled Program Review Committee ("PRC") hearing requesting" to be informed what Plaintiff would have to do to be removed from RRL."

21. Inspite of Plaintiff's continued inquiries consecutively every ninety (90) day scheduled hearings, PRC deliberately didn't inscribe Plaintiff's inquiries (on his rationales') regarding being removed from RRL, as a antic, to elude creating any substantive record regarding Plaintiff being placed on RRL without a due process hearing

(6)

22. On January 18, 2018 upon Plaintiff's arrival to SCI Smithfield and at his first PRC scheduled hearing, Plaintiff's placement on RRL was acknowledged for the first time approximately nineteen (19) months after being notified (by Plaintiff's counselor) that Defendant Wetzel subsequently placed Plaintiff on RRL.

## Denial Of Due Process

23. Defendant Wetzel placing Plaintiff on RRL without any formal notice, due process hearing nor a adequate appellate remedy where Plaintiff can request redress.

24. Defendant Wetzel placing Plaintiff on RRL and not taking in account that Plaintiff is on the active mental health roster and long term solitary confinement isn't ~~conducive~~ conducive to Plaintiff's pre-existent mental health impairment.

## Denial Of Mental Health Treatment

25. Plaintiff has repeatedly been denied adequate mental health treatment despite countless formal institutional requests' (pursuant to the provision of the DC·135A) in regard to Plaintiff's deteriorated mental stability being in solitary confinement for so long.

26. Plaintiff being repeatedly denied any therapeutic treatment

(7)

to help Plaintiff maintain his mental stability while being in solitary confinement long term.

## Exhaustion Of administrative Remedies

27. Plaintiff has exhausted his administrative remedies with respect to all claims asserted within the context of this complaint.

## Claims For Relief

28. The action of Defendant Wetzel in placing Plaintiff on RRL without any formal notice, due process hearing nor a pre-established remedy to request redress constitute a violation of the Due Process Clause of the Fourteenth Amendment United States constitution.

29. The action of Defendant Wetzel in placing Plaintiff on RRL Knowing that Plaintiff is on the active mental health roster, take two(2) different psyche medications daily and long term solitary confinement isn't conducive to Plaintiff's pre-existent mental impairment constitute a violation of the cruel and unusual punishment statute(s) pursuant to the Eighth amendment United States constitution.

30. The action of defendant Wetzel of not making the necessary arrangements so Plaintiff can receive adequate mental health treatment in regard to Plaintiff being able to maintain his mental stability—granted defendant Wetzel elected to place Plaintiff on RRL constitute a violation of the cruel and unusual punishment statute(s) pursuant to the Eighth amendment United States Constitution.

## Relief Requested

Wherefore, Plaintiff requests that the Court grant the following relief:

A. Issue a declaratory judgment stating that:

1. That placing Plaintiff on RRL without a formal notice, due process hearing nor pre-established appellate remedy where Plaintiff can request redress violated Plaintiff Due Process Rights under the Fourteenth amendment United States Constitution.

2. That placing Plaintiff on RRL inspite of knowing that Plaintiff is mentally impaired and long term solitary confinement isn't conducive to Plaintiff's mental stability violated the cruel and unusual punishment statute(s) of the Eighth amendment United States Constitution.

3. That placing Plaintiff on RRL and not making the necessary arrangements so Plaintiff can receive adequate mental health treatment, therapeutic nor otherwise, violated the cruel and unusual punishment statute(s) of the Eighth amendment United States Constitution.

B. Issue an injunction ordering that Defendant Wetzel, exercise his discretion, by giving PRC a directive to start conducting RRL placement hearings, in which would create substantive record.

1. Issue an injunction ordering that Defendant Wetzel could establish a remedy where prisoners' thats placed on RRL can request redress.

2. Issue an injunction ordering that Defendant Wetzel could re-litigate the DC-ABM 802 Institutional Policy (particularly section 1(A)(1) and section 4(A)) to establish a substantive record oppose to just PRC being able to give recommendations that's unbeKnownst to the prisoners' thats being recommended.

3. Issue an injunction ordering that Defendant Wetzel remove Plaintiff from off of RRL and the necessary arrangements could be made for Plaintiff to receive adequate mental health treatment that's in accordance to Plaintiff's mental impairments possibly becoming worst since Plaintiff's confinement in solitary.

c. award incidental damages in the following amount:

1. That Defendant Wetzel could collectively pay the legal expenses (in full) if Plaintiff shall prevail in this civil action.

b. award compensatory damages in the following amount:

1. $100,000 jointly and severally against Defendant Wetzel for placing Plaintiff on RRL, despite being mentally impaired and solitary confinement (long term) not being conducive to Plaintiff's mental stability.

2. $100,000 jointly and severally against Defendant Wetzel for placing Plaintiff on RRL without any formal notice nor due process hearing.

3. $100,000 jointly and severally against Defendant Wetzel for placing Plaintiff on RRL, without first making the necessary arrangements so Plaintiff could receive adequate mental health treatment to maintain his mental stability being confined in solitary long term.

E. award punitive damages in the following amount:

1. $50,000 against Defendant Wetzel

F. award such other relief as it may appear that Plaintiff is entitled.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

william, mayo

Mr. william Mayo #FZ-2947
SCI Smithfield
P.O. Box 999
1120 Pike St
Huntingdon, Pa. 16652

Date: april 20, 2018

(12)

Exhibit B

DC-804
Part 1

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
**1920 TECHNOLOGY PARKWAY**
**MECHANICSBURG, PA 17050**

FOR OFFICIAL USE
0306004
GRIEVANCE NUMBER

**OFFICIAL INMATE GRIEVANCE**

| TO: FACILITY GRIEVANCE COORDINATOR | FACILITY: | DATE: |
|---|---|---|
| Ms Rhonda A. House | SCI Fayette | august 1, 2016 |
| FROM: (INMATE NAME & NUMBER) | SIGNATURE OF INMATE: | |
| Mr. william Mayo #FZ-2947 | william Mayo | |
| WORK ASSIGNMENT: | HOUSING ASSIGNMENT: | |
| None | RHU/1A/ cell-12 | |

**INSTRUCTIONS:**
1. Refer to the DC-ADM 804 for procedures on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. List in Block B any action you may have taken to resolve this matter. Be sure to include the identity of
   staff members you have contacted.

A. Provide a brief, clear statement of your grievance. Additional paper may be used, maximum two
   pages (one DC-804 form and one one-sided 8½" x 11" page). State all relief that you are seeking.

I'm filing this grievance in accordance to the 13.8.1 Procedures Manual [ pursuant
to the settlement agreement ( which is caption at Disability Rights Network of
Pennsylvania vs. John Wetzel, No. 1:13-CV-00635X precedent to the cruel and unusual
punishment statute that's govern by my eighth amendment United States Con-
stitutional Right)].

<u>Brief History Of Relevant Facts</u>

I'm submitting this grievance to report that I'm a recent transfer into this
Institution that's currently confined in the RHU since November 20, 2015 that's
serving a lengthy sanction thats starting to weigh on me mentally. Nonetheless, I'm
on the current Mental Health Roster ( classified as a c code), but despite my count-
less formal requests for treatment: I'm being blatantly denied and the foregoing
could be substantiated by the fact that I have yet to see my Psychiatric Re-
view Team (PRT) since my arrival, in which is absurd granted its been nearly 9-
months since my arrival. Furthermore, the countless forms of retaliation that
I've been forced to endure ( which is well documented )has compelled me to have

B. List actions taken and staff you have contacted, before submitting this grievance.

[ see: Attachments ]

Your grievance has been received and will be processed in accordance with DC-ADM 804.

S.C.I. FAYETTE                8-2-16

Signature of Facility Grievance Coordinator                Date

AUG 0 2 2016

WHITE Facility Grievance Coordinator Copy      CANARY File Copy      PINK Action Return Copy
GOLDEN ROD Inmate Copy                                        SUPERINTENDENT ASSISTANT II

*DC-ADM 804, Inmate Grievance System Procedures Manual*
*Section 1 – Grievances & Initial Review*                                      **Attachment 1-A**
Issued: 3/31/2014
Effective: 5/1/2014

(1)

suicidal thoughts and etc..., so giving the constitutionality within my claim I'm asking if this grievance can be admitted for review as a abuse of discretion on behalf of the psych department

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

## Declaratory Relief

according to the preparatory measure that's established with-in the abovementioned settlement agreement I would like to request that a immediate treatment plan-be put together pursuant to my diagnosis—precedent to my Eighth amendment United states constitutional Right.

## Punitive Damage

I would like to request to be awarded $10,000 for the clearcut violation to my due process along with the mental anguish that it caused.

## Monetary Compensatory Damages

I'm requesting if I can be awarded $200.00 for everyday that it takes to have the abovementioned concern rectified.

Respectfully submitted,

ul mayo

RHU / LA / Cell 12

august 1, 2016

cc: file

(2)

Form DC-135A

**INMATE'S REQUEST TO STAFF MEMBER**

Commonwealth of Pennsylvania
Department of Corrections

INSTRUCTIONS

Complete items number 1-8. If you follow instructions in preparing your request, it can be responded to more promptly and intelligently.

1. To: (Name and Title of Officer)
Ms Duncan/ The Psychology Department

By: (Print Inmate Name and Number):
Mr William Mayo #FZ-2947

william Mayo
Inmate Signature

Work Assignment
None

2. Date
May 16, 2016

4. Counselor's Name:

5. Unit Manager's Name:

7. Housing Assignment
RHU/1b/cell 12

Subject: State your request completely but briefly. Give details.

Re: Mental Health Evaluation

I'm writing you this Request slip per a directive that I was giving 'minutes ago' by the Psychologist (Mr Burkovich) in reference to receiving a mental health evaluation—because being housed in this RHU is really starting to weigh on me mentally. So it's my hope that you can honor my request by scheduling a evaluation at your earliest convenient?

Respectfully submitted,
W Mayo

cc file

S.C.I. FAYETTE

AUG 0 2 2016

SUPERINTENDENT ASSISTANT II

Mr. Mayo;

Please work with me by being more specific with what you mean by mental Health Evaluate - al what you think this will _____ then I Can _____ there

C-14 CAR only ☐                    | To DC-14 CAR and DC-15 IRS ☐

MEMBER NAME Lisa A Dunlay _____ DATE 5/24/16
Cc File, Mr. Birkovich, Ms. Borden          Signature

| Form DC-135A<br><br>**INMATE'S REQUEST TO STAFF MEMBER** | Commonwealth of Pennsylvania<br>Department of Corrections<br><br>**INSTRUCTIONS**<br>Complete items number 1-8.  If you follow instructions in preparing your request, it can be responded to more promptly and intelligently. |
|---|---|
| 1.   To: (Name and Title of Officer)<br><br>Ms buncon / The Psychology be pt | 2.   Date:<br><br>July 22, 2016 |
| 3.   By: (Print Inmate Name and Number)<br><br>Mc william Mayo # FZ-2947<br><br>william mayo<br><div align="center">Inmate Signature</div> | 4.   Counselor's Name:<br><br>— — — — — — —<br><br>5.   Unit Manager's Name:<br><br>— — — — — — — |
| 6.   Work Assignment:<br><br>None | 7.   Housing Assignment:<br><br>RHU / LA / Cell 12 |

8.   Subject:  State your request completely but briefly.  Give details.

<div align="center">Re: Mental Health Treatment Plan</div>

I'm writing you this Request slip, again, as a follow up to the four (4) that I sent to you throughout the last two (2) months in reference to your bepactment putting a mental health treatment plan together for Me, so its my hope that you can get back to Me at your earliest convenient?

<div align="right">Respectfully Submitted,<br>W Mayo</div>

cc: file

9.   Response (This Section for Staff Response Only)

| To DC-14 CAR only ☐ | To DC-14 CAR and DC-15 IRS ☐ |
|---|---|

STAFF MEMBER NAME _____   _____   DATE _____
<div align="center">Print                                                 Signature</div>

# Mnem Neuropsychology

Carol L. Armstrong, Ph.D., ABPN                    Appointments in Bala Cynwyd and Exton, PA
*Diplomate with the American Board of Professional Neuropsychology*

## CONFIDENTIAL

## NEUROPSYCHOLOGICAL EVALUATION

**Patient Name: Mayo, William**        **Education:** 9th grade (special education
**Date of Birth: 10/10/78**                             placement
**Date of Testing: 5/10/07**             **Occupation: none**

**Reason for Referral:** Mr. Mayo was referred by counsel for neuropsychological evaluation of mental capacity.

**Summary of Findings:** Mr. Mayo passed two formal tests of symptom validity, and responded with sufficient effort throughout the evaluation, with resulting expected intra-test patterns. These results should be considered valid and interpretable, without contamination from exaggeration of deficit, failure of motivation or effort, or attempt to simulate impairment.

Mr. Mayo demonstrated widespread and often severe neurocognitive impairment. His reading disorder appears to have bases in very severely impaired auditory attention, severely impaired rapid visuospatial perceptual processing, and extensive memory impairment. Memory impairment was present for both visual and verbal material, but appeared more severe for verbal material. Executive dysfunction was also severe, affecting problem solving, abstract reasoning, cognitive flexibility, and control of impulsivity. Mr. Mayo's neurological ability to control his impulsivity was tested in a non-emotional setting, without frustration on his part, with focus and effort, and with reminders to refrain from making errors.

His inability to control his impulsivity, reasoning, and problem solving impairments are key components of his neuropsychological profile that are relevant to the question of his diminished capacity. The extent and severity of his impairments clearly indicate diminished capacity. The extent of severe impairment in attention, processing speed, memory, impulsivity, reasoning, and problem solving are also very relevant to the question of whether he was able to form a conscious intent to commit murder. His inability to refrain from a maladaptive behavior during the test of impulsivity, even in a completely unemotional context, shows that he frequently acts without intention or aforethought, and does so repeatedly, in serial decisions. This was under the condition of a quiet, calm, and well structured testing environment. However, at the time of his crime, he was taking phencyclidine (PCP). Acute PCP effects last from several hours to days, and cause detachment from reality, distortion of perception, emotional anxiety, and violent behavior, which are concurrent with changes in blood pressure, heart rate, breathing, and temperature. However, for the purpose of this evaluation, the effects upon Mr. Mayo's cognitive capacities that would affect his ability to form the intent to commit murder will be discussed.

PCP effects cause brain dysfunction because of disruption of neurotransmitter sites that play a major role in cognition, especially learning, problem solving, control of behavior, and memory, and in emotion [1]. Impairments in cognition are long lasting, as they are documented in

---

[1] Jentsch et al. Enduring cognitive deficits and cortical dopamine dysfunction in monkeys after long-term administration of phencyclidine. Science 1997; 277(5328): 953-55.

4023 Howell Road                                         tel: 610-408-9944
Malvern, PA 19355                                       fax: 610-408-8671
PA License No. PS-4399-L               email: armstrongc@email.chop.edu

**Patient Name: Mayo, William**
**DOT: 5/10/07**

individuals who had PCP abuse but were sober for over two years [2]. Even after long abstinence from PCP, neuropsychological impairments persist (even without other neurological history). The most severe impairments in chronic PCP abuse are in abstract thinking and perceptual-motor integration that affects processing speed and perception. The combined factors of effects of acute PCP effects on memory, perception, impulsivity, and problem solving, and the delayed effects of chronic PCP abuse on cognition were both present in Mr. Mayo's case at the time of the crime. Furthermore, in the presence of pre-existing neurological, brain damage, PCP use would exacerbate the pre-existing neuropsychological impairments. Mr. Mayo's neuropsychological deficits, pre-existing, created by, and exacerbated by the ingestion of PCP on the day of the crime in question, along with the long lasting effects of his chronic abuse of PCP, substantially interfered with his ability to form the specific intent to kill.

Additional Factors: Although school records do not document an autism spectrum disorder, such a diagnosis must be considered because of the behaviors he showed in childhood. These suspect behaviors, all observed during his childhood, are based on the prominence in reports of his very poor social relations, very poor social communication, aggressive behavioral disturbance, difficulty understanding and attending to lessons, self-absorption, better perceptual motor functioning than verbal, and executive dysfunction (impulsivity, impaired problem solving). The pattern of his IQ scores is consistent with autism, in that they were low average in childhood, and became lower in youth and adulthood, demonstrating the failure of the development of intelligence that could be due to maladaptive behavior. In particular, it is known that in IQ testing, autistics do particularly poorly on the Picture Arrangement test, which was his lowest score. This test requires understanding of inferential information about cause and effect, and is strongly dependent on understanding social communication. Mr. Mayo has a history of suspected maternal use of cocaine while pregnant with him, and this presents a major risk factor for autism, greatly increasing the chance of autism by almost 200 times (risk of .06 in population versus 11% in children with cocaine exposure, along with a very high rate of language delay [3]).

    The neuropsychological deficits found in this evaluation far exceed those associated with depression, so that the presence of Mr. Mayo's depression does not explain the impairments found.

    These opinions expressed in this report are given to a reasonable degree of neuropsychological certainty.

**Summary of Results:**  *Heaton norms are used where applicable
(WNL=within normal limits)

## SENSORY AND MOTOR FUNCTIONING:

| | |
|---|---|
| Manual praxis | Average: 62nd%ile |
| Finger motor speed | Bilaterally average, difference between hands is wnl: R dominant=41st%ile, L=30th%ile |
| Tactile perception | WNL bilaterally |
| Finger/tactile gnosia | WNL bilaterally |

---

[2] Carlin et al. Is phencyclidine (PCP) abuse associated with organic mental impairment? American Journal of Drug and Alcohol Abuse 1979; 6(3): 273-281.

[3] Davis et al. Autism and developmental abnormalities in children with perinatal cocaine exposure. Journal of National Medical Association 1992; 84(4): 315-9.

Patient Name:  Mayo, William
DOT:  5/10/07

## PROCESSING SPEED:

| | |
|---|---|
| Simple visual tracking speed | Low average: 25th%ile* |
| Visuospatial tracking and transcoding | Very severely impaired: <1st%ile |
| Set shifting speed | Low average: 25th%ile* |

## ATTENTION:

| | |
|---|---|
| Visual selective attention | Average: 76th%ile |
| Visual scanning | Organized |
| Auditory selective attention | Severely impaired, impaired ability to predict the probability of a target: 1st%ile |
| Reversal of verbal patterns | Average: 26th%ile |
| Reversal of visuospatial patterns | Low average: 19th%ile |

## LANGUAGE:

| | |
|---|---|
| Phonemic verbal fluency | Average: 70th%ile* |
| Semantic verbal fluency | Average: 61st%ile* |
| Auditory encoding of syntax and grammar | Average: 45th%ile |
| Word finding, naming | Low average: 19th%ile* |
| Reading, word recognition | Moderately impaired, adequate phonological awareness: 4th%ile, 4th grade equivalent |
| Written expression | WNL graphia, linguistic structure and abstraction; limited thought integration |

## VERBAL MEMORY:

| | |
|---|---|
| Phonological working memory span | Low average: 20th%ile |
| Paragraph recall (declarative memory) | Borderline impaired: 16th%ile |
| Delayed recall of paragraph | WNL retention over time |
| Semantic associative memory | Severely impaired, encoding impairment, recall dependent on primacy and recency effects: 1st%ile |
|     Learning rate | Impaired |
|     Retrieval after interference | Severely impaired absolute recall and relative retention after distractors: 1st%ile |
|     Retrieval after delay | Average retention over time: 34th%ile |
|     Recognition memory | Profoundly impaired recognition of targets, revealing encoding impairment (<1st%ile), very severely impaired recognition of false positives (<1st%ile) |

## VISUOSPATIAL PROCESSING AND MEMORY:

| | |
|---|---|
| Facial perception | Average: 72nd%ile |
| Perceptual organization | Average: 44th%ile |
| Mental spatial rotation | Moderately impaired: 5th%ile |
| Visuospatial working memory span | Average: 81st%ile |
| Simple figure recall | Mildly impaired: 14th%ile |
| Delayed recall of figures | Moderately impaired, impaired rate of retention: 6th%ile |

Patient Name:  **Mayo, William**
DOT:  5/10/07

| | |
|---|---|
| Complex visual memory | Mildly impaired absolute recall (10th%ile) and relative retention (9th%ile), simplified, loss of detail |
| Long term visual memory consolidation | WNL retention over time |

## INTELLECTUAL PROCESSES AND EXECUTIVE FUNCTIONS:

| | |
|---|---|
| Fund of general knowledge | Mildly impaired: 9th%ile |
| Mental control of simple sequences | Average: 45th%ile |
| Written calculation | Moderately impaired: 4th%ile, 5th grade equivalent |
| Logical deductive reasoning | Moderately impaired, failure to acquire number concept: 5th%ile |
| Cognitive flexibility | Profoundly impaired: <1st%ile |
| Abstract verbal reasoning | Mildly impaired: 9th%ile |
| Practical verbal reasoning and judgment | Low average: 25th%ile |
| Control of impulsivity | Severely impaired, failure primarily of control of impulsivity during decision making, as well as motor impulsivity |

**MOOD:** Mr. Mayo reported symptoms on the Beck Depression Inventory characterizing a moderate depression.  Symptoms were primarily those of dysphoria, reflecting his sense of personal failure and fault, feelings of guilt and self disappointment, and emotional blunting.  He also endorsed symptoms of anergia, sleep disturbance, abulia, loss of libido, and self-preoccupation.

## Tests Administered:

Clinical Interview
Rey 15-item symptom validity test
Hiscock and Hiscock Symptom Validity Test
Beck Depression Inventory
Tactile Perceptual Exam
Finger Oscillation Test
Alternating Collaborative Hand Movements
Wechsler Memory Scale-R:   Mental Control
                            Logical Memory I, II
                            Visual Reproduction I, II
                            Digit Span
                            Visual Memory Span
Boston Naming Test
Word Fluency Test- FAS
Category Fluency Test-Animal Naming
Auditory Selective Attention Test
Bells Test
Rey Auditory Verbal Learning Test with Immediate and Delayed Recall and Recognition
Test of Written Expression
Token Test-MAE
Rey-Osterrieth Complex Figure Test with Immediate and Delayed Recall
Symbol Digit Modalities Test - oral version
Facial Recognition Test

Patient Name:  Mayo, William
DOT: 5/10/07

Road Map Test
Wisconsin Card Sorting Test-One deck version
Porteus Mazes
Trail Making Test
Wechsler Adult Intelligence Scale-III:     Information
                                              Comprehension
                                              Similarities
Wide Range Achievement Test-III:  Reading
                                              Arithmetic

# BACKGROUND INFORMATION

Information was gathered from interview with Mr. Mayo at the Curran Fromhold Correctional Institute in Philadelphia, and from records provided by his counsel.  These records included transcripts of the trial (8/12/04) and preliminary hearing from (12/31/02) related to Mr. Mayo's PCP intoxication, and the opinion of the Court of Common Pleas of Philadelphia County of 12/3/04.  Reports were reviewed by Steven Samuel PhD in 2004, Robert Stanton MD in 1998, the School District of Philadelphia, school records from the Philadelphia Common Pleas Court (Juvenile Branch), NorthEast Treatment Centers, and the Pennsylvania Department of Public Welfare and Youth Development Center.

**Presenting History**: William Mayo is a right hand and leg dominant, 28 year old, unmarried father who was convicted of a capitol offense committed on 11/23/2002, leading to incarceration on that date.  He has a long history of significant impairment in social relations, severe impulsivity, and severe learning disability that is more severe in reading and language arts.  He also has a history of psychological and physical abuse, and drug use in adolescence and adulthood.

Psychological evaluation by Dr. Samuel on 7/29/04 with the Wechsler Abbreviated Scale of Intelligence (WASI) yielded a Full Scale IQ estimate of 63 (1st%ile) that indicates mild mental retardation, as well as an Adjustment Disorder with Mixed Anxiety and Depressed Mood.

**Neuropsychological Complaints:**  Mr. Mayo was very slow to recall information, and had apparent difficulty in recalling his own personal history, both of which are strongly associated with neurocognitive impairment.  He denied blurred or double vision, photophobia, lateralized weakness, feelings of imbalance, frequent dizziness, hypoacusis, tinnitus, phonophobia, visual or auditory hallucinations, paresthesias, smell or taste distortions, unusual object perception, distractibility, problems discriminating left from right, spatial disorientation, mental dyscalculia, and problems organizing a task.

Mr. Mayo stated that his memory was "not that good" for recalling information from the past, placement of objects, what he is saying while in the process of speaking, and his purpose during the course of an activity.  He stated that he was unable to read.  He reported that he was never able to drive a car very well.  Although he has been taught to use a computer, he stated, "I couldn't really get it", and 'I need more patience from the teacher than the average person'.

**Medical History**: Mr. Mayo related that he began drinking alcohol at age 15 years until the time he was incarcerated.  He drank several times a week, and estimated an amount that suggested one pint of liquor a day.  He stated that he often had blackouts, or periods of time that he lost track of

and could not recall.  He denied delirium tremens.  He stated that he began using phencyclidine (PCP) in 2001.  He took it daily until he was incarcerated, and simultaneously took alcohol and other drugs such as Xanax, marijuana, and cough syrup.  He denies current daily caffeine use.  He reported no history of regular cigarette smoking history.

Mr. Mayo denied any history of surgery requiring general anesthesia, known environmental exposure to neurotoxins, cardiac or pulmonary disease, hypertension, diabetes, cerebrovascular accident, thyroid disorder, or seizures.  He sleeps poorly during the day and takes daily naps.  He has occasional headaches.  He is on no medications.

Mr. Mayo recalled two incidents of head injuries.  One was at the age of 16 years when he was the unrestrained front seat passenger in a car that ran into a car in front of it.  He stated that the right front area of his head hit the windshield.  He had little recall of this accident, but believes that he received some sort of therapy.  He was also injured at the age of 23 years when he fell off a motorcycle traveling at about 40 m.p.h.  He stated that he did not know how to ride the motorcycle properly and was unhelmeted when he fell head first to the right.  He had a laceration requiring stitches, either loss of consciousness or post traumatic amnesia as he "woke up in the hospital", and was hospitalized one day, by his recall.

Mr. Mayo was examined by Dr. Robert Stanton as a court ordered clinical psychiatric evaluation (Court of Common Pleas Trial Division, Philadelphia), on 7/3/98, when Mr. Mayo was 19 years of age prior to the sentencing following a guilty plea to the charge of Receiving Stole Property.  Diagnoses at that time were drug abuse (codeine) and personality disorder NOS.

**Developmental History**: A report from the Sleighton School relates a report by a family friend that William Mayo was exposed to crack cocaine in utero, that his parents were alcohol abusers, and that he had very poor or absent quality of life in infancy and early childhood.  Mr. Mayo recalled that he was called "retarded" as an insult.  He was abused by his "aunt" when he lived with her; she hit his backside with a belt.  He recalled that he would be beaten for a prolonged period, not just spanked.

Mr. Mayo's parents separated when he was five years of age, and since then he has had little contact with his father.  He reported that he then lived with his grandmother for two or three years, then back with his mother for two years, and then with an aunt who was actually a friend of his mother.  He stated that he "was bounced around a lot".  Other records indicate that he resided in foster homes.  His mother was found by the court to be incapable of caring for him due to a drug addiction.

**Educational and Occupational History**: William Mayo attended a Catholic school for kindergarten and first grade.  He then attended the Philadelphia school system (Kelly Elementary School), which used the CTB for their City-Wide Testing Program.  In second grade at the age of seven years old, he was found to be severely impaired in reading and language arts (2nd %ile), and mid average in arithmetic.  He placement was ungraded after second grade.  Therefore, after second grade, his scores on the CTB cannot be interpreted because he was always given a grade equivalent form that was significantly below that expected for his age.  He was being educated in the special education program, and achievement expectations were per the actual grade level on which he was achieving, regardless of age.  Therefore, he typically scored average, even though the grade equivalent was much below his age.  Elementary school grades revealed Cs through Fs in academic classes, with Bs occurring sometimes in Mathematics (other times Fs).

Mr. Mayo was evaluated at the age of 10 years eight months (6/5/89) on behalf of the School District of Philadelphia by Dr. Gary Feldman, school psychologist, for learning needs and because of very poorly controlled behavior.  He had been first evaluated in the second grade, and

Patient Name: Mayo, William
DOT: 5/10/07

had been in special education program for three years at that time. Behavioral problems described by teachers at that time were temper tantrums, screaming and kicking, throwing furniture, inability to work independently, screaming for teachers' help, and complete failure of impulse control if frustrated. The Wechsler Intelligence Scale for Children-R was administered, and demonstrated a Full Scale IQ of 85, Verbal IQ of 94, and Performance IQ of 78. Below average range scores were found in Digit Span, Comprehension, Picture Completion, Picture Arrangement (lowest score SS=4), Block Design, and Coding. Mr. Mayo scored at an age equivalent on the Bender Visual Motor Gestalt Test, but was severely below grade equivalents on achievement testing. His word reading on the Wide Range Achievement Test-R (level 1) was <1st%ile and equivalent to mid first grade, Spelling was 1st%ile and equivalent to late first grade, and Arithmetic was 4th%ile and equivalent to early third grade. Dr. Feldman observed William to have poor social relations with peers (including hypersensitivity), to bully younger children, to be unable to attend to a lesson, to make noises while concentrating on copying, and to become very easily frustrated when working. William was suspected of having been emotionally abused or physically neglected. Dr. Feldman observed that Mr. Mayo's perceptual motor abilities were significantly better than his language abilities. He also observed his great difficulty in perceiving cause and effect relationships in the Picture Arrangement Test.

By the age of 13 years, Mr. Mayo was referred to a disciplinary school in a 12/20/92 report by the Philadelphia School System. By 3/27/92 he was transferred to the E. S. Miller school because of serious behavioral problems, where he continued with an Individualized Educational Plan for learning and emotional needs. He also received lessons specifically in understanding social relations ("social class"). However, by 9/30/03 (age 15 years) he was detained in the Youth Study Center, and by 12/10/93 he was remanded to the Sleighton School following an auto theft. Testing while he was there indicated that he was still word reading at a second grade equivalent, and math was at the third grade level. At this time, when Mr. Mayo was 15 years of age, he was evaluated by Barbara Sulik on 12/2/93 for the purpose of disposition planning because a court requested. Although the evaluation was not very successful, an IQ estimate based on the Slosson Intelligence Test – R was 72 (3rd%ile), and his achievement score in word reading was below third grade while arithmetic was equivalent to the end of the fifth grade. During his time at the Sleighton School, he was found to have little self control, no awareness of what was wrong with his behavior, to be lacking in self discipline, and to have inappropriate social judgment. Apparently, due to concerns about failure to locate family with whom he could reunite, a recommendation was made that his probation officer arrange another placement for him.

On 5/2/94, he was allowed a trial enrollment in Bartram High School, thus discharging him from institutional residence. A prior foster home agreed, with conditions, to accept William back to her home (Emma Duboise). Records indicate repetition of eighth and/or ninth grades. Although William Mayo would presumably have preferred not being institutionalized, during this time he was verbally abusive to treatment staff, noncooperative, impulsive, irresponsible, and did not attend school, and after a 60 day review was discharged to a more structured placement at the Youth Development Center Unit Two Boys Secure in New Castle, Pennsylvania. He was admitted there on 4/26/95, and review on (10/4/95) revealed "numerous sanctions and several seclusion placements" due to defiance, impulsivity, and complete lack of insight. By 1/12/96, when he was 17 years of age, the intensive program to teach him to adhere to basic cottage rules, resist impulsive behavior, learn to self correct, and work openly and honestly in counseling resulted in some improvements. He maintained the average cottage point incentives, tolerated annoyances better, was learning to delay some gratification, and requested a roommate. Although he was more involved in his studies and wished to take the G.E.D., it was

**Patient Name:  Mayo, William**
**DOT:  5/10/07**

not considered a realistic objective.  His effort had clearly increased.  He was recommended for discharge in March 1996 while he was still 17 years of age, to his sister, Christine Mayo, with aftercare as well.

Records from the Philadelphia Common Pleas Court (Juvenile Branch) one year later indicated that William Mayo was on probation for one year, and was adjusting generally without major problems.  He searched for employment throughout this year, and at one time attained a job part time in 9/96 but was laid off again due to lack of work.  He attained full time work again in the same location (Veterans Stadium), but became unemployed again after several months of work.  Mr. Mayo reported this was due to his failure to report to work.  This is Mr. Mayo's only significant history of employment.  By 5/23/97 he was refusing to continue to seek employment, or attend the other criminal justice program requirements including drug testing.  By 2/23/98 he was sentenced for receiving stole property.

**Psychosocial History**: Mr. Mayo has two siblings, both sisters, now 31 and 37 years of age.  He stated that they had no known neurological, psychiatric, or learning disorders.  He reports never being married, but has one daughter, five years of age, whom he has not seen since she was two years old.

Mr. Mayo reported that his mother is in her early 50s, and has no significant health problems.  He stated he had no information about his father.

Carol Armstrong, Ph.D., ABPN
Neuropsychologist

(12)

# GRIEVANCE REJECTION
## SCI-Fayette
50 Overlook Dr.
LaBelle, PA 15450

This serves to acknowledge receipt of your grievance to this office. In accordance with the provisions of DC-ADM 804, "Inmate Grievance System", I have reviewed all documents provided as part of the grievance. Upon consideration of the grievance, it is the decision of this office to reject your grievance due to a failure to comply with the provisions of the DC-ADM 804, as specified below.

| Inmate Name: | William Mayo | | Inmate Number: | FZ2947 |
|---|---|---|---|---|
| Facility: | SCI-Fayette | | Unit Location: | L-A-12 |
| Grievance #: | 636664 | | | |

| Decision: | Rejection |
|---|---|

*Your grievance is being rejected for the reason(s) outlined below.*

**Rationale:**

| | | |
|---|---|---|
| | 1. | Grievances related to the following issues shall be handled according to the procedures specified in the policies listed and shall not be reviewed by the Facility Grievance Coordinator. |
| | a) | DC ADM 008 Prison Rape Elimination Act (PREA) – allegations of a sexual nature against a staff member and/or inmate-on-inmate sexual contact |
| | b) | DC ADM 801 Inmate Discipline/Misconduct Procedures |
| | c) | DC ADM 802 Administrative Custody Procedures |
| X | 2. | The grievance was not submitted within fifteen (15) working days after the events upon which claims are based. |
| | 3. | Grievance involves matter(s) that occurred at another facility and should be directed by the inmate to the appropriate facility. |
| | 4. | The grievance was not signed and/or dated with correct commitment number, name, contained UCC references, or was not presented in proper format. |
| | 5. | Grievance must be legible, understandable, and presented in a courteous manner. |
| | 6. | The grievance exceeded the two page limit. Description needs to be brief. |
| | 7. | Grievance does not indicate that you were personally affected by a Department or facility action or policy. |
| | 8. | Grievances based upon different events must be presented separately. |
| | 9. | The issue(s) presented on the attached grievance has been reviewed or is currently being reviewed and addressed. Prior grievance # |
| | 10. | Group grievances or grievances filed on behalf of another inmate are prohibited. |
| | 11. | Grievance disputes previous grievances, appeal decisions or staff members who rendered those decisions. |
| | 12. | You are currently on grievance restriction. You are limited to one grievance every 15 working days. Your last grievance was #. |
| | 13. | You have not provided this Office with required documentation for proper review such as a DC-153A, Personal Property Inventory Sheet, Confiscated Items Receipt, Commissary/Outside Purchase Form and/or documents outlined on the DC ADM 005 Notification of Deductions Memo and/or the Notification of Amended Deductions Memo. |
| | 14. | The publication appeal did not include a copy of the Notice of Incoming Publication Denial Form. (Attachment 3-B of DC-ADM 803) |

**Response:**

| Signature: | Rhonda House |
|---|---|
| Title: | Facility Grievance Coordinator |
| Date: | August 2, 2016 |

cc:   Facility Grievance Coordinator
       DC-15
       File

*DC-ADM 804, Inmate Grievance System Procedures Manual*
*Section 1 – Grievances & Initial Review*                                    *Attachment 1-C*
Issued: 1/26/2016
Effective: 2/16/2016

| Form DC-135A<br><br>**INMATE'S REQUEST TO STAFF MEMBER** | Commonwealth of Pennsylvania<br>Department of Corrections<br><br>INSTRUCTIONS<br>Complete items number 1-8.  If you follow instructions in preparing your request, it can be responded to more promptly and intelligently. |
|---|---|
| 1.  To: (Name and Title of Officer)<br>The superintendent (Mr. Jay Lane) | 2.  Date:<br>August 4, 2016 |
| 3.  By: (Print Inmate Name and Number)<br>Mr. William Mayo # F7-2947<br><br>_william mayo_<br><div align="center">Inmate Signature</div> | 4.  Counselor's Name:<br>– – – – – |
| | 5.  Unit Manager's Name:<br>– – – – – |
| 6.  Work Assignment:<br>None | 7.  Housing Assignment:<br>RHU/1A/Cell-12 |

8.  Subject:  State your request completely but briefly.  Give details.

<div align="center">Re: Grievance Appeal (#636664)</div>

 I'm filing this grievance appeal to contest the rejection for initial review that I received from the Grievance Coordinator (Ms Rhonda A House) dated: 8.2.16), in which she abused her discretion in the foregoing regard by not admitting my grievance for review asserting subsection 2. on the rationale "the grievance was not submitted within fifteen (15) working days after the events upon which claims are based." The foregoing is absurd, simply because consistent with what I specified within the context of my grievance I've been attempting to get mental health treatment since my recent transfer into this Institution (nearly 9 months ago) Plus, the submitting of this grievance was predicated from my last formal request [see: Attachment (dated: 7.22.16)], so for the Grievance Coordinator to deem my grievance as being untimely isn't supported by the record, for that specific reason alone, my claim of her abusing her discretion is substantiated, so granted the legitimate penological interest within my claim I'm asking if the Grievance

9.  Response: (This Section for Staff Response Only)

coordinators rejection can be overruled in its entirety, and my claim can be accepted for a full review.

<div align="right">Respectfully Submitted,<br>W Mayo</div>

cc: file

| To DC-14 CAR only ☐ | To DC-14 CAR and DC-15 IRS ☐ |
|---|---|

STAFF MEMBER NAME _____    _____ DATE _____
<div align="center">Print                                        Signature</div>

*7.2.1, Counseling Services Procedures Manual - Section 3, Request Slips*          ***Attachment 3-A***

Facility Manager's Appeal Response
SCI Fayette
50 Overlook Dr.
Labelle, Pa. 15450

This serves to acknowledge receipt of your grievance appeal to the Facility Manager for the grievance noted below. In accordance with the provisions of DC-ADM 804, "Inmate Grievance System Policy", the following response is being provided based on a review of the entire record of this grievance. The review included your initial grievance, the Grievance Officer's response, your appeal to me and any other documents submitted.

| Inmate Name: | William Mayo | Inmate Number: | FZ2947 |
|---|---|---|---|
| Facility: | SCI Fayette | Unit Location: | LA 1012 |
| Grievance #: | 636664 | | |
| Publication (if applicable): | | | |

| Decision: | ☐ Uphold Response (UR)     ☐ Uphold in part/Deny in part |
|---|---|
| | ☐ Uphold Inmate (UI) |
| | ✓ Dismiss/Dismiss Untimely |

*It is the decision of this Facility Manager to uphold the initial response, uphold the inmate, dismiss, or Uphold in part/Deny in part. This response will include a brief rationale, summarizing the conclusion, any action taken to resolve the issue(s) raised in the grievance and your appeal and relief sought.*

| Response: | | *Frivolous* | |
|---|---|---|---|

I am in receipt of your appeal for rejected grievance #636664. Your grievance was rejected based on reason #2. Reason #2 states: The grievance was not submitted within fifteen (15) working days after the events upon which claims are based. You failed to provide a date, on your grievance, within fifteen working days upon which claims are based. You did provide two requests slips with your grievance, however, one was dated as being answered on 5-24-16 and the other request was not answered by staff. Policy permits 5 days to correct the reason for rejection and resubmit. You failed to do this. Your grievance was properly rejected.

Your appeal is dismissed.

| Signature: | Jay Lane | *(signature)* |
|---|---|---|
| Title: | Facility Manager | |
| Date: | 8-12-16 | |

cc: DC-15
    File

***DC-ADM 804, Inmate Grievance System Procedures Manual***
***Section 2 – Appeals***
Issued: 1/26/2016
Effective: 2/16/2016

*Attachment 2-B*

(15)

| Form DC-135A<br><br>**INMATE'S REQUEST TO STAFF MEMBER** | Commonwealth of Pennsylvania<br>Department of Corrections<br><br>INSTRUCTIONS<br>Complete items number 1-8. If you follow instructions in preparing your request, it can be responded to more promptly and intelligently. |
|---|---|

| 1.  To: (Name and Title of Officer)<br>The Chief Grievance Officer | 2.  Date:<br>September 8, 2016 |
|---|---|
| 3.  By: (Print Inmate Name and Number)<br>Mc William Mayo # F7-2947<br><br>_william mayo_<br>Inmate Signature | 4.  Counselor's Name:<br>— — — — — — — |
| | 5.  Unit Manager's Name:<br>— — — — — — — |
| 6.  Work Assignment:<br>None | 7.  Housing Assignment:<br>RHU/1A/Cell-12 |

8.  Subject:  State your request completely but briefly.  Give details.

<div align="center">Re: Appeal To Final Review Grievance (#636664)</div>

The following grievance appeal to final level review is being submitted for redress to contest both the rejection for initial review that I received from the Grievance Coordinator (Ms. Rhonda A. House) dated: 8.2.16) along with the superintendent (Mr. Jay Lane) response (dated: 8.12.16) despite me not actually receiving it until 8.18.16 a fact that I figured that it's essential to specify, at this forum, in my pursuit to safeguard my sub-stantive due-process, especially since I noticed that backdating administrated response's is a systematic practice here at SCI Fayette along with flimsy attempts to undermine the validity within a grievable concern despite how much legitimate penological inter-est that it can contain. Nonetheless, a cursory view of the record should be suffici-ient to substantiate what I'm now specifying upon this final level appellate review: that I'm being blatantly denied mental health treatment, inwhich the Grievance Coordi-nator set the stage upon issuing her rejection, erroneously alleging that the grie-vance wasn't submitted timely and the superintendent adopted the foregoing assert-

9.  Response (This Section for Staff Response Only)

ion in spite of how absurd it was in both truth and material fact, especially with the Superintendent's assertion of "[I] failed to provide a date on [my] grievance... The fore-going is preposterous and can arguably place in question if both the Grievance Coordi-nator and the superintendent's assertion of "[I] failed to provide a date on [my] grievance..." The foregoing is preposterous and can arguably place in question if both the Grievance Coordinator and the superintendent attempt is just to undermine the fact that I'm on the active mental health roster, but is being blatantly denied mental health treatment: which is a violation to my eighth amendment United States Constitutional Right pursuant to the cruel and unusual punishment statute.

| To DC-14 CAR only ☒ | To DC-14 CAR and DC-15 IRS ☐ |
|---|---|

STAFF MEMBER NAME _____   _____ DATE _____
<div align="center">Print                                    Signature</div>

*7.2.1, Counseling Services Procedures Manual - Section 3, Request Slips*          **Attachment 3-A**

The superintendent further asserted that "[I] did provide two request slips with [my] grievance, however one was dated as being answered on 5.24.16 and the other request was not answered by staff". The foregoing is correct, the second request slip was dated 7.22.16 wasn't answered, in which was the motivating factor that compelled me to file the foregoing grievance on 8.1.16; which in hindsight make my grievance timely despite what both the Grievance coordinator along with the superintendent asserted, so granted the constitutionality within my claim I'm asking if my grievance appeal can be admitted for final level review and the Grievance coordinator and superintendent response(s) can be overruled, in their entirety.

Respectfully submitted,

w. mayo

RHU / LA / cell·12

cc: file

(17)

**FINAL APPEAL DECISION DISMISSAL**
**Secretary's Office of Inmate Grievances & Appeals**
Pennsylvania Department of Corrections
1920 Technology Parkway
Mechanicsburg, PA 17050

This serves to acknowledge receipt of your appeal to final review for the grievance identified below. In accordance with the provisions of DC-ADM 804, "Inmate Grievance System," this Office has reviewed all documents provided as part of the grievance record. Upon consideration of the entire record, it is the decision of this office to dismiss your appeal to final review due to a failure to comply with the provisions of the DC-ADM 804, as specified below.

| Inmate Name: | William Mayo | | Inmate Number: | FZ-2947 |
|---|---|---|---|---|
| **SCI Filed at:** | Fayette | | **Current SCI:** | Fayette |
| **Grievance #:** | 636664 | | | |

| Decision: | | Dismiss | |
|---|---|---|---|
| | | 1) Your grievance was properly rejected at the facility level for the reason(s) outlined below. | |
| | X | 2) Your grievance is being dismissed at the final appeal level for the reason(s) outlined below. | |

**Rationale:**

| | | |
|---|---|---|
| | 1. | Grievances related to the following issues shall be handled according to procedures specified in the policies listed and shall not be reviewed by the Facility Grievance Coordinator. |
| | | a) DC ADM 008 Prison Rape Elimination Act (PREA) – allegations of a sexual nature against a staff member and/or inmate-on-inmate sexual contact |
| | | b) DC ADM 801 Inmate Discipline/Misconduct Procedures |
| | | c) DC ADM 802 Administrative Custody Procedures |
| X | 2. | The grievance or appeal was not submitted within fifteen (15) working days after the events upon which claims are based. |
| | 3. | Grievance involves matter(s) that occurred at another facility and should be directed by the inmate to the appropriate facility. |
| | 4. | The grievance was not signed and/or dated with correct commitment name, number, contained UCC references, or was not presented in proper format. |
| | 5. | Grievance or appeal must be legible, understandable, and presented in a courteous manner. |
| | 6. | The grievance or appeal exceeded the two page limit.  Description needs to be brief. |
| | 7. | Grievance does not indicate that you were personally affected by a Department or facility action or policy. |
| | 8. | Grievances based upon different events must be presented separately. |
| | 9. | The issue(s) presented on the attached grievance has been reviewed or is currently being reviewed and addressed.  Prior grievance # |
| | 10. | Group grievances or grievances filed on behalf of another inmate are prohibited. |
| | 11. | Grievance disputes previous grievances, appeal decisions or staff members who rendered those decisions. |
| | 12. | You are currently on grievance restriction. You are limited to one grievance every 15 working days.  Last grievance #  was submitted on |
| | 13. | You have not provided this Office with required and/or legible documentation for proper review. |
| | 14. | An appeal to final review is not permitted when you fail to comply with submission procedures. |

**Response:**

Future correspondence regarding this grievance/issue may be filed without action or reply.

| Signature: | Dorina Varner |
|---|---|
| Title: | Chief Grievance Officer |
| Date: | 9/16/16 |

DLV/MEB

cc:     DC-15/Superintendent Lane
         Grievance Office

***DC-ADM 804, Inmate Grievance System Procedures Manual***
***Section 2 – Appeals***                                             ***Attachment 2-G***
Issued: 1/26/2016
Effective: 2/16/2016

(18)

Exhibit C

| Form DC-135A | Commonwealth of Pennsylvania<br>Department of Corrections |
|---|---|
| **INMATE'S REQUEST TO STAFF MEMBER** | **INSTRUCTIONS**<br>Complete items number 1-8. If you follow instructions in preparing your request, it can be responded to more promptly and intelligently. |

| 1. To: (Name and Title of Officer)<br>The chief Hearing Examiner | 2. Date:<br>June 13, 2016 |
|---|---|
| 3. By: (Print Inmate Name and Number)<br>Mr william Mayo #FZ-2947<br>_william mayo_<br><div align=center>Inmate/Signature</div> | 4. Counselor's Name<br>Mr ankrom |
| | 5. Unit Manager's Name<br>Mr. S Buzas |
| 6. Work Assignment<br>None | 7. Housing Assignment<br>RHU/1A/ cell·07 |

8. Subject: State your request completely but briefly. Give details.

Re: Restricted Release Placement appeal (# Bb13477)

I'm sending this appeal to my restricted release placement to your Depart-
ment despite it may not be the correct remedy to request redress, but
because I'm not familiar with the protocol granted my research into the
DC·ADM 801, DC·ADM 802 Institutional Policies along with the 11.2.1 Procedures
Manual and I couldn't retrieve any information on the correct appellate
remedy, so if your office isn't specifically the one that handle matters
in the foregoing regard can you possibly forward it to who does.

<u>Brief History of Relevant Facts</u>

On June 10, 2016 I was notified by my counselor (Mr ankrom)(here at SCI
Fayette)upon doing his weekly tour: I requested a timecut granted
both my lengthy RHU sanction and in accordance to the pre-established
criteria however his reply was "that I've been placed on RRL", nowhich

9. Response (This Section for Staff Response Only)

immediately created a argument between Me and Him for two(2) rea-
sons: (1) giving the fact that I wasn't formally notified that I was
being staff for—which he lied and said that he previously did and (2)
I never received a hearing which would have been ample opportunity
to utilize my Due Process Right that's govern by the Fourteenth amend-
ment United States Constitution, especially in hindsight to the signi-
ficance of the foregoing matter and being notified upon my counselor
doing a tour instead of at a PRC due process hearing is absurd, so just
applying what I now assume is the appropriate appellate remedy to
ask if my placement on RRL can again be reviewed and/or you can, at

| To DC-14 CAR only ☐ | To DC-14 CAR and DC-15 IRS ☐ |
|---|---|

Staff Member Name _____ / _____ Date _____
<div align=center>Print         Sign</div>

Revised July 2000

(1)

the least, give the administration here (at SCI Fayette) a directive to con-
duct a hearing pursuant to my due process

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that
the foregoing is true and correct.

Respectfully Submitted,

_w Mayo_

RHU/ LA/ cell 07

June 13, 2016

( Per U.S. Mail )

Mr. William Mayo # FZ-2947

SCI Fayette

P.O. Box 999

Labelle, Pa. 15450-0999

cc: file

(2)



**pennsylvania**
DEPARTMENT OF CORRECTIONS

June 22, 2016

William Mayo, FZ-2947
SCI-Fayette
P.O. Box 9999
50 Overlook Drive
LaBelle, PA 15450-1050

Re:   Correspondence dated June 16, 2016

Dear Mr. Mayo:

    This will acknowledge receipt of your above-referenced letter.  Upon review of the issue(s) you raise, I am filing your letter without action for the following reason(s):

    In accordance with DC ADM 802 Administrative Custody Procedures, appeal of placement on the Restricted Release List is not permitted.

Sincerely,

Joseph H. Dupont
Chief Hearing Examiner

JHD/srh
cc:   File

Governor's Office of General Counsel| 1920 Technology Parkway | Mechanicsburg, PA 17050 |
717.728.7763 | www.cor.state.pa.us

(3)

Exhibit b
( Nunc Pro Tunc)



# pennsylvania
## DEPARTMENT OF CORRECTIONS

**TO**          William Mayo FZ2947
                 SCI Fayette

**FROM**       Renee Foulds  *Renee Foulds*
                 Staff Assistant, Western Region

**DATE**       October 12, 2016

**RE**          Correspondence

I am writing regarding your recent correspondence addressed to Deputy Secretary Glunt concerning your desire to be removed from the RRL and placed on the SMU. It has been referred to me for review and response.

Mr. Mayo, your most recent Annual Review occurred in August 2016 and included a review of your Restricted Release List status. Your RRL placement is currently under review by Secretary Wetzel. He may elect to continue you on RRL or direct the facility to staff you for a referral to a specialized housing program. Your Unit Team will notify you of the outcome of his review.

Your willingness alone does not necessarily make you a qualified and appropriate candidate to participate in an SMU. Direct any follow-up questions you may have to your Unit Team.

I trust this adequately addresses your concern.

/rf
cc:   Superintendent Lane – FYT
       UM David Perry
       amiwhitman #2016-C08-000000231
       Western Files
       File

Department of Corrections | 1920 Technology Parkway | Mechanicsburg, Pennsylvania 17050 | 717.728.4122
www.cor.state.pa.us

(1)

Mr. William Mayo # EZ-2947
SCI Smithfield
P.O Box 999
1120 Pike St
Huntingdon, Pa 16652

april 20, 2018

The Office of clerk
U.S District court
Middle District of Pa.
William J. Nealon Federal Bldg.
& U.S Courthouse
235 N Washington AVE
Scranton, Pa. 18501 1148

Re: Civil Rights Complaint

To: the clerk,

   Please find enclose a motion to proceed in forma pauperis ( with its necessary attachments'), a civil rights complaint along with all the proper documentation so it could be served upon the named defendant, so its my hope that you can file them both, on my behalf, at your earliest convenience

   If you was so kind to honor my request I would like to utilize this opportunity to thank you in advance

                    Respectfully submitted,
                    W. Mayo

cc: file




U.S. POSTAGE >> PITNEY BOWES

ZIP 16652 $ 002.89⁰
02 1W
0001395401 APR 20 2018

INMATE MAIL
PA DEPARTMENT
OF CORRECTIONS

Mr. William Mayo #FZ-2947
SCI Smithfield
P.O. Box 999
1120 Pike Street
Huntingdon, Pa. 16652

To the office of the clerk
United States District Court
Middle District of Pa.
William J Nealon Federal Bldg
& Courthouse
Washington Avenue
Scranton, Pa. 18501.1148

RECEIVED
SCRANTON

APR 23 2018

PER_____
DEPUTY CLERK