IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

WILLIAM MAYO,                           :
               Plaintiff,          :          1:18-cv-0878
                                :
     v.                                   :          Hon. John E. Jones III
                                :
JOHN E. WETZEL,                         :
               Defendant          :

## MEMORANDUM AND ORDER

**October 27, 2020**

Plaintiff William Mayo ("Mayo"), an inmate in the custody of the Pennsylvania Department of Corrections ("DOC") commenced this action on April 23, 2018, pursuant to 42 U.S.C. § 1983, challenging his extended placement in solitary confinement.  (Doc. 1, p. 4).  The sole Defendant is John E. Wetzel ("Wetzel"), Pennsylvania Secretary of Corrections.

Wetzel answered the complaint on August 20, 2018.  (Doc. 19). The matter has proceeded through discovery.  Presently pending is Defendant's motion (Doc. 44) for summary judgment pursuant to Federal Rule of Civil Procedure 56.  The motion is presently ripe for disposition (Docs. 45, 46, 50-56, 58) and, for the reasons set forth below, the motion will be granted in part and denied in part.

## I.    STANDARD OF REVIEW

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue

as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). "[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *Brown v. Grabowski*, 922 F.2d 1097, 1111 (3d Cir. 1990). A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. *Id.*; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Brotherhood of Carpenters and Joiners of America*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d Cir. 1996). Although the moving party must establish an absence of a genuine issue of material fact, it need not "support its motion with affidavits or other

similar materials negating the opponent's claim." *Celotex*, 477 U.S. 317, 323 (1986). It can meet its burden by "pointing out ... that there is an absence of evidence to support the nonmoving party's claims." *Id.* at 325.

Once such a showing has been made, the non-moving party must go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. FED. R. CIV. P. 56; *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986) (stating that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); *Wooler v. Citizens Bank*, 274 F. App'x 177, 179 (3d Cir. 2008).  The party opposing the motion must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Celotex,* 477 U.S. at 323; *see also Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992).  "[T]he non-moving party 'may not rely merely on allegations or denials in its own pleadings; rather, its response must . . . set out specific facts showing a genuine issue for trial.'"  *Picozzi v. Haulderman*, 2011 WL 830331, *2 (M.D. Pa. 2011) (quoting FED. R. CIV. P. 56(e)(2)).  "Inferences should be drawn in the light most

favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of North America. Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. *Celotex*, 477 U.S. at 322.  The adverse party must raise "more than a mere scintilla of evidence in its favor" and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir. 1989). The mere existence of some evidence in support of the non-movant will not be adequate to support a denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the non-movant on that issue. *Anderson*, 477 U.S. at 249–50.

## II.   **STATEMENT OF MATERIAL FACTS**

After being involved in an altercation with staff at the State Correctional Institution at Greene ("SCI-Greene") in November of 2015, Mayo was found guilty of misconduct and sanction to one-year in solitary confinement commencing on November 19, 2015, and transferred to the State Correctional Institution at Fayette ("SCI-Fayette").  (Doc. 45, ¶ 2; Doc. 45-1, pp. 10-12; Doc. 51, ¶ 11).

On June 10, 2016, Mayo's counselor informed him that he was placed on the Restricted Release List ("RRL").  (Doc. 45, ¶ 4; Doc. 51, ¶ 13).  He immediately "filed an appeal."  (Doc. 45-1, p. 18).  He remained in solitary confinement beyond the one year stint because he "caught several additional misconducts" while at SCI-Fayette.  (Doc, 45, ¶ 3; Doc. 45-1, pp. 13, 14).  On January 9, 2018, DOC officials transferred him to the State Correctional Institution at Smithfield ("SCI-Smithfield) for unknown reasons.  (Doc. 45-1, p. 16).  His management team at SCI-Smithfield informed him that inmates on the RRL list were reviewed once a year during the inmate's annual review.  (*Id.* at 19).  It is his understanding that Defendant Wetzel "ultimately places prisoners and/or remove[s] prisoners on the restricted release list."  (*Id.*).  He remains on the RRL list, is unaware of the information that would assist him in being removed or the removal process, and has not discovered anything that can assist him in being removed from the list.  (*Id.*).

Since his arrival at SCI-Smithfield, he asserts that he has consistently requested from the Program Review Committee, every 90 days, some therapeutic treatment and/or some sort of "step down program" that could be instituted to facilitate his release from solitary confinement.  (Doc. 51, ¶ 16).  He notes that his placement in solitary confinement is based on sanctions for various disciplinary

infractions but that the DOC's administrative disciplinary process provides no remedy for placement in extended solitary confinement or ability to be released from such confinement.  (*Id.* at 17, 18).

While in solitary confinement, Mayo has access to medical treatment and psychiatric treatment.  (Doc. 45, ¶ 6; Doc. 45-1, pp. 22, 23; Doc. 51, ¶ 19).  He has been prescribed daily psychiatric medications since approximately 2014.  (Doc. 45-1, p. 24; Doc. 51, ¶ 19).  In June 2017, he suffered a mental breakdown that necessitated placement in a psychiatric observation cell for a period of days and resulted in an increase in psychiatric medication.  (Doc. 45-1, pp.25, 26; Doc. 51, ¶ 19).   At the time of his January 9, 2019 deposition, Mayo remained in solitary confinement in a psychiatric observation cell due to suicidal thoughts and expressions of self-harm.  (Doc. 45-1, pp. 26, 27).

## III.   **DISCUSSION**

Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials.  See 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws,

shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

*Id.*; *see also Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002); *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996). To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Thus, § 1983 limits liability to persons who violate constitutional rights.

The crux of Mayo's complaint which, at the time of filing, concerned approximately twenty-nine months in solitary confinement, "despite being on the active mental health roster and taking two (2) different psyche medications daily," is as follows:

> Since Plaintiff's confinement in solitary he's caught several misconduct reports – all in accordance with Plaintiff's deteriorated mental stability, being confined in virtual isolation in a 7x12 cell for 23-24 hours per day, 7 days a week and being denied adequate mental health treatment, in which has also caused Plaintiff to display suicidal behavior and impose a significant hardship on Plaintiff in relation to the ordinary incidents of prison life.

> Despite Plaintiff being on RRL, he was never giving [sic] any formal notice, a due process hearing nor do the Department of Corrections ("DOC") have a pre-established appellate remedy where Plaintiff…can request redress.

(Doc. 1, p. 2, 4-8).  Mayo sets forth Eighth Amendment conditions of confinement and inadequate mental health treatment claims as well as a Fourteenth Amendment due process claim.

### A.    Eighth Amendment

#### 1.    Conditions of Confinement

Mayo alleges that he suffers from deteriorated mental stability as a result of being confined in virtual isolation in a 7x12 cell for 23-24 hours per day, 7 days a week, for a number of years.  He asserts that these conditions violate the Eighth Amendment's prohibition against cruel and unusual punishment. The Supreme Court has "interpreted this prohibition ... to impose affirmative duties on prison officials to 'provide humane conditions of confinement.' " *Young v. Martin*, 801 F.3d 172, 177 (3d Cir. 2015) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).  Such a claim requires both objective and subjective proof.  A prisoner must demonstrate that he or she has been subjected to an objectively "serious" deprivation of life's basic needs or a "substantial risk of serious harm" to his or her health and that defendants knew of and were deliberately indifferent to that deprivation or risk.  *Farmer*, 511 U.S. at 834, 114 S.Ct. 1970; *Wilson v. Seiter*, 501 U.S. 294, 298-303 (1991) *Ricks v. Shover*, 891 F.3d 468, 473 (3d Cir. 2018).  The prison official must be aware of facts from which the inference could be drawn that

a substantial risk of serious harm exists, and he must also draw that inference.

*Farmer*, 511 U.S. at 837.

The United States Court of Appeals for the Third Circuit has recently noted

the following:

> We have repeatedly recognized the severe effects of prolonged solitary confinement, as have our sister circuits and Justices of the Supreme Court. *See Shoats v. Horn*, 213 F.3d 140, 144 (3d Cir. 2000) (noting that a special assistant to the Secretary of the Pennsylvania DOC would be concerned about the psychological damage to an inmate after only 90 days of solitary confinement); *Palakovic v. Wetzel*, 854 F.3d 209, 225 (3d Cir. 2017) (acknowledging the "robust body of legal and scientific authority recognizing the devastating mental health consequences caused by long-term isolation in solitary confinement"); *Porter v. Clarke*, 923 F.3d 348, 355–56 (4th Cir. 2019) (holding that conditions on Virginia's death row violated the Eighth Amendment and noting that "[i]n recent years, advances in our understanding of psychology and new empirical methods have allowed researchers to characterize and quantify the nature and severity of the adverse psychological effects attributable to prolonged placement of inmates in isolated conditions*"); Davis v. Ayala*, 576 U.S. 257, 135 S. Ct. 2187, 2210, 192 L.Ed.2d 323 (2015) (Kennedy, J., concurring) ("[R]esearch still confirms what this Court suggested over a century ago: Years on end of near-total isolation exact a terrible price."); *Glossip v. Gross*, 576 U.S. 863, 135 S. Ct. 2726, 2765, 192 L.Ed.2d 761 (2015) (Breyer, J., dissenting) (reviewing literature and stating that "it is well documented that such prolonged solitary confinement produces numerous deleterious harms").

*Porter v. Pennsylvania Dep't of Corr.*, 974 F.3d 431, 442–43 (3d Cir. 2020). We

are mindful that solitary confinement "does not, in itself, violate the Constitution,"

and isolation "may be a necessary tool of prison discipline." *Johnson v. Wetzel*,

209 F. Supp. 3d 766, 777, 780 (M.D. Pa. 2016) (citing *Young v. Quinlan*, 960 F.2d

351, 364 (3d Cir. 1992), superseded on other grounds by statute, Prison Litigation

Reform Act, 42 U.S.C. § 1997 *et seq*.).

Defendant fails to address the conditions of confinement claim in his

motion.  Hence, the claim will proceed to trial.

        2.   <u>Medical Care</u>

Prison officials violate the Eighth Amendment when they are deliberately

indifferent to a prisoner's serious medical needs.  *Estelle v. Gamble*, 429 U.S. 97,

104-05 (1976). To succeed on such a claim, "a plaintiff must make (1) a subjective

showing that 'the defendants were deliberately indifferent to [his or her] medical

needs' and (2) an objective showing that 'those needs were serious.'" *Pearson v.*

*Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (alteration in original)

(quoting *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)).

Deliberate indifference occurs when prison officials "intentionally deny[ ] or

delay[ ] access to medical care or interfer[e] with the treatment once prescribed."

*Pearson*, 850 F.3d at 534 (quoting *Estelle*, 429 U.S. at 104-05).  "Allegations of

medical malpractice are not sufficient to establish a Constitutional violation," nor

is "[m]ere disagreement as to the proper medical treatment." *Spruill v. Gillis*, 372

F.3d 218, 235 (3d Cir. 2004).  A "failure to provide adequate care ... [that] was

deliberate, and motivated by non-medical factors" is actionable under the Eighth Amendment, but "inadequate care [that] was a result of an error in medical judgment" is not. *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993); *Estelle*, 429 U.S. at 105–06. As long as a physician exercises professional judgment, his or her behavior does not violate a detainee's constitutional rights. *See Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990).

Individual liability will be imposed under Section 1983 only if the state actor played an "affirmative part" in the alleged misconduct. *See Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)). Liability "cannot be predicated solely on the operation of *respondeat superior*." *Id.* In other words, defendants in Section 1983 civil rights actions "must have personal involvement in the alleged wrongs . . . shown through allegations of personal direction or of actual knowledge and acquiescence." *Atkinson v. Taylor*, 316 F.3d 257, 271 (3d Cir. 2003); *Rode*, 845 F.2d at 1207-08. A plaintiff must establish the particulars of conduct, time, place, and the person responsible. *Evancho*, 423 F.3d at 354; *Rode*, 845 F.2d at 1207-08. When a plaintiff merely hypothesizes that an individual defendant may have had knowledge of or personal involvement in the deprivation of his or her rights,

individual liability will not follow.  *Atkinson*, 316 F.3d at 271; *Rode*, 845 F.2d at 1207-08.

At his deposition, Mayo testified that he has received daily psychiatric medications since approximately 2014, and has regular access to medical treatment and psychiatric treatment throughout his internment in solitary confinement.  (Doc. 45, ¶ 6; Doc. 45-1, pp. 22-24; Doc. 51, ¶ 19).  He testified that he received psychiatric care following a June 2017 mental breakdown.  Specifically, medical officials monitored his condition by placing him in a psychiatric observation cell for a period of days and increased his psychiatric medication.  (Doc. 45-1, pp.25, 26; Doc. 51, ¶ 19).  He further testified that at the time of his January 9, 2019 deposition, he remained in solitary confinement but was housed in a psychiatric observation cell due to suicidal thoughts and expressions of self-harm.  (Doc. 45-1, pp. 26, 27).

It is clear that Mayo's psychiatric needs constitute a serious medical need.  It is equally clear from his testimony that he has received psychiatric and medical care throughout solitary confinement.  There is no evidence that Defendant Wetzel had any personal involvement in Mayo's psychiatric or medical care or that he acted with deliberate indifference to Mayo's need for such care.

Further, Third Circuit precedent makes clear that "a non-medical prison official" cannot "be charge[d] with the Eighth Amendment scienter requirement of deliberate indifference" when the "prisoner is under the care of medical experts" and the official does not have "a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner." *Spruill*, 372 F.3d at 236; *see also Durmer*, 991 F.2d at 69 (holding that non-physicians cannot be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor).  Mayo testified at his deposition that he receives regular psychiatric care and has access to medical care.  No reasonable factfinder could conclude from the record before us that Wetzel acted with deliberate indifference to Mayo's psychiatric needs.

### B.    Fourteenth Amendment

Mayo contends that Defendant Wetzel violated his procedural due process rights under the Fourteenth Amendment by indefinitely placing him in solitary confinement and in failing to provide him with any meaningful review or opportunity to be heard in opposition to his detention in solitary confinement. "The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection

must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S.

209, 221 (2005).  In analyzing a procedural due process claim, "the first step is to

determine whether the nature of the interest is one within the contemplation of the

'liberty or property' language of the Fourteenth Amendment."  *Shoats v. Horn*, 213

F.3d 140, 143 (3d Cir. 2000).  If the asserted interest falls within the protections of

the Due Process Clause, the second step is to determine whether the plaintiff was

afforded "all of the process he was due."  *Id.*  The threshold question is whether

Mayo has asserted a liberty interest sufficient to trigger due process protections.

Liberty interests arise from the Constitution or "from an expectation or

interest created by state laws." *Williams v. Sec'y, Dep't. of Corr.*, 848 F.3d 549,

558-59 (3d Cir. 2017) (quoting *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005)). In

the prison context, a protected liberty interest arises only where a restraint

"imposes atypical and significant hardship on the inmate in relation to the ordinary

incidents of prison life." *Williams v. Secretary Pennsylvania Dep't of Corrections*,

848 F.3d 549, 558-59 (3d Cir.) cert. denied sub nom. *Walker v. Farnan*, ––– U.S. –

–––, 138 S. Ct. 357, 199 L. Ed. 2d 263 (2017), and cert. denied sub nom. *Williams*

*v. Wetzel*, ––– U.S. ––––, 138 S. Ct. 357, 199 L. Ed. 2d 263 (2017) (citations

omitted).  In determining whether a condition of confinement creates a protected

liberty interest, a court must consider: "(1) the duration of the challenged

14

conditions; and (2) whether the conditions overall imposed a significant hardship in relation to the ordinary incidents of prison life." *Shoats v. Horn*, 213 F.3d 140, 144 (3d Cir. 2000). *See also Williams*, 848 F.3d at 560 (quoting *Shoats*); *Powell v. Weiss*, 757 F.3d 338, 346 (3d Cir. 2014) (noting that *Shoats* is the governing standard).

Defendant argues that Mayo's due process claim fails as a matter of law because " '[p]lacement on the Restricted Release List does not deprive an inmate of a liberty interest protected by the Due Process Clause.' *Hill v. Fisher*, 2010 WL 6004059, *6 (M.D. Pa. Nov. 17, 2010), report and recommendation adopted, 2011 WL 846201 (M.D. Pa. Mar. 8, 2011) (citation omitted); *see also Nifas v. Beard*, 2009 WL 3241871, at *14 (W.D. Pa. Oct. 6, 2009), aff'd as modified, 374 F. App'x. 241 (3d Cir. 2010) ('Moreover, it appears that placement on the RRL could not amount to a deprivation of a liberty interest at all because, at most, it accomplishes only a change in the identity of the decision maker as to whether Plaintiff should be released from the AC or not. Rather than the Program Review Committee making such a decision, the decision is reserved to the Secretary or his designee. Such a change in who the decision maker is would not appear to this court to implicate a liberty interest[.]') (citation omitted)." (Doc. 46, p. 3). In so arguing, Defendant oversimplifies Mayo's claim, fails to address

recent case law and the changing landscape of indefinite solitary confinement, and ignores his contention that his placement on the RRL and the lack of a clear avenue to be removed from the RRL or review process, has resulted in, or contributed to, his indefinite detention in solitary confinement.

In *Shoats*, application of the two-step inquiry lead the Court of Appeals to conclude that an eight-year term in solitary confinement created a protected liberty interest. *Shoats*, 213 F.3d at 144. And, in *Williams*, the Third Circuit examined the "robust body of scientific research on the effects of solitary confinement" and concluded that indefinite exposure to isolated confinement causes "deep and long-term psychic harm" and "poses a grave threat to well-being." *Id.* at 566. Although the Third Circuit did not pronounce that any and every exposure to solitary confinement violates the Constitution, it did hold that inmates have a clearly established Fourteenth Amendment right to avoid unnecessary, unexamined, and indefinite solitary confinement. *Williams*, 848 F.3d at 574. Importantly, in *Williams*, the Third Circuit explicitly distinguished solitary confinement as a disciplinary sanction from indefinite segregation, *see Williams*, 848 F.3d at 562 (noting that indefinite solitary confinement "contrasts sharply with other common forms of solitary confinement, such as ... punitive segregation"), *see also Sandin*, 515 U.S. at 485-86 (holding that a finite period of solitary confinement for

disciplinary purposes "does not present a dramatic departure from the basic conditions of [plaintiff's] indeterminate sentence").

It is undisputed that Mayo's initial one-year placement in solitary confinement in November 2015 was for disciplinary reasons and that the one-year period was extended due to additional misconduct.  But there is no indication as to how long the period was extended due to misconduct and, according to Mayo's December 26, 2019 filing (Doc. 58), at that point in time, his tenure in solitary confinement was approaching four years.  Although Defendant provides a printout of Mayo's misconducts over the past years (Doc. 42-2), we cannot discern from a printout whether these misconducts serve the basis for Mayo's continued placement in solitary confinement or whether he remains in solitary because of the RRL list.  Because the record is devoid of an explanation or any clarity as to purpose or length of Mayo's continued detention in solitary confinement beyond the initial one-year disciplinary period, there are issues of fact as to whether his solitary confinement has triggered a protected liberty interest under the Fourteenth Amendment.  The Court will deny Defendant's motion seeking summary judgment on this claim.

IV.   **CONCLUSION**

Based on the above, Defendant's motion (Doc. 44) for summary judgment

pursuant to Federal Rule of Civil Procedure 56, will be GRANTED in part and

DENIED in part.

V.   **ORDER**

NOW THEREFORE, in accordance with the foregoing Memorandum, it is

hereby ORDERED that:

1.   Defendant's motion (Doc. 44) for summary judgment pursuant to
     Federal Rule of Civil Procedure 56, is GRANTED in part and
     DENIED in part.

2.   The motion is DENIED with respect to Mayo's Eighth Amendment
     conditions of confinement claim and Fourteenth Amendment due
     process claim.  These claims will proceed to trial.

3.   The motion is GRANTED with respect to Plaintiff's Eighth
     Amendment denial of adequate medical care claim.  Entry of
     summary judgment in favor of Defendant and against Plaintiff on
     this claim is DEFERRED pending the final outcome of the
     litigation.

4.   The matter is REFERRED to Chief Magistrate Judge Susan E.
     Schwab for assignment to a United States Magistrate Judge for the
     purposes of conducting a settlement conference and exploring consent
     to the jurisdiction of a United States Magistrate Judge for the trial of
     this matter.

s/ John E. Jones III
John E. Jones III, Chief Judge
United States District Court
Middle District of Pennsylvania
