# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

WILLIAM MAYO,                    :        Civil No. 1:18-CV-878
                                 :
    Plaintiff,               :
                                 :        (Judge Conner)
    v.                       :
                                 :
JOHN WETZEL,                     :        (Magistrate Judge Carlson)
                                 :
    Defendant.               :

## REPORT AND RECOMMENDATION

## I.  Statement of Facts and of the Case

This case, which comes before us for consideration of a second summary judgment motion filed by the defendant, (Doc. 78), calls upon us to consider whether caselaw construing the Eighth Amendment's prohibition against cruel and unusual punishment clearly extended to, and proscribed, prolonged solitary confinement of mentally ill inmates. Finding that the Eighth Amendment had clearly been extended by the courts to this specific factual context by the time that the plaintiff filed this lawsuit, it is recommended that this second motion for summary judgment be denied.

In this case we do not write upon a blank slate. Quite the contrary, this lawsuit has already been the subject of one prior summary judgment ruling by the district court in October of 2020, a ruling which shapes and defines the remaining claims in this litigation. (Doc. 59).

1

That prior summary judgment ruling clearly defined this case as a lawsuit involving allegations of prolonged solitary confinement imposed upon a mentally-ill inmate. As the district court explained when describing the factual background of this case:

> After being involved in an altercation with staff at the State Correctional Institution at Greene ("SCI-Greene") in November of 2015, Mayo was found guilty of misconduct and sanction to one-year in solitary confinement commencing on November 19, 2015, and transferred to the State Correctional Institution at Fayette ("SCI-Fayette"). (Doc. 45, ¶ 2; Doc. 45-1, pp. 10-12; Doc. 51, ¶ 11).

> On June 10, 2016, Mayo's counselor informed him that he was placed on the Restricted Release List ("RRL"). (Doc. 45, ¶ 4; Doc. 51, ¶ 13). He immediately "filed an appeal." (Doc. 45-1, p. 18). He remained in solitary confinement beyond the one year stint because he "caught several additional misconducts" while at SCI-Fayette. (Doc, 45, ¶ 3; Doc. 45-1, pp. 13, 14). On January 9, 2018, DOC officials transferred him to the State Correctional Institution at Smithfield ("SCI-Smithfield) for unknown reasons. (Doc. 45-1, p. 16). His management team at SCI-Smithfield informed him that inmates on the RRL list were reviewed once a year during the inmate's annual review. (Id. at 19). It is his understanding that Defendant Wetzel "ultimately places prisoners and/or remove[s] prisoners on the restricted release list." (Id.). He remains on the RRL list, is unaware of the information that would assist him in being removed or the removal process, and has not discovered anything that can assist him in being removed from the list. (Id.).

> Since his arrival at SCI-Smithfield, he asserts that he has consistently requested from the Program Review Committee, every 90 days, some therapeutic treatment and/or some sort of "step down program" that could be instituted to facilitate his release from solitary confinement. (Doc. 51, ¶ 16). He notes that his placement in solitary confinement is based on sanctions for various disciplinary infractions but that the DOC's administrative disciplinary process provides no remedy for

placement in extended solitary confinement or ability to be released from such confinement. (Id. at 17, 18).

While in solitary confinement, Mayo has access to medical treatment and psychiatric treatment. (Doc. 45, ¶ 6; Doc. 45-1, pp. 22, 23; Doc. 51, ¶ 19). He has been prescribed daily psychiatric medications since approximately 2014. (Doc. 45-1, p. 24; Doc. 51, ¶ 19). In June 2017, he suffered a mental breakdown that necessitated placement in a psychiatric observation cell for a period of days and resulted in an increase in psychiatric medication. (Doc. 45-1, pp. 25, 26; Doc. 51, ¶ 19). At the time of his January 9, 2019 deposition, Mayo remained in solitary confinement in a psychiatric observation cell due to suicidal thoughts and expressions of self-harm. (Doc. 45-1, pp. 26, 27).

(Doc. 59, at 4-6).

According to the district court: "[t]he crux of Mayo's complaint . . ., concerned approximately twenty-nine months in solitary confinement, 'despite being on the active mental health roster and taking two (2) different psyche medications daily.' " (Id., at 7). The district court then noted that: "Mayo sets forth Eighth Amendment conditions of confinement and inadequate mental health treatment claims as well as a Fourteenth Amendment due process claim." (Id., at 8).

With the legal issues framed in this fashion, and considering these issues against the factual backdrop of an inmate with significant mental health conditions subjected to prolonged solitary confinement, the district court denied the defendant's motion for summary judgment on this Fourteenth Amendment due process claim. In reaching this conclusion, the district court found that:

Defendant oversimplifies Mayo's claim, fails to address recent case law and the changing landscape of indefinite solitary confinement, and

ignores his contention that his placement on the RRL and the lack of a clear avenue to be removed from the RRL or review process, has resulted in, or contributed to, his indefinite detention in solitary confinement.

(Id., at 15-16). Accordingly, as to this due process claim the court held that:

Because the record is devoid of an explanation or any clarity as to purpose or length of Mayo's continued detention in solitary confinement beyond the initial one-year disciplinary period, there are issues of fact as to whether his solitary confinement has triggered a protected liberty interest under the Fourteenth Amendment. The Court will deny Defendant's motion seeking summary judgment on this claim.

(Id., at 17).

In reaching this conclusion, the district court necessarily found, in the context of prolonged solitary confinement of this mentally ill inmate, that Mayo had a right to due process which was clearly established in the law in 2018 when he filed this lawsuit. The Third Circuit has expressly reaffirmed this view holding that, with respect to death row inmates who are subjected to prolonged solitary confinement, "[b]ecause [the inmate]'s procedural due process rights have been clearly established since we decided Williams [v. Secretary Pennsylvania Dep't of Corrections, 848 F.3d 549] in 2017, Defendants are not entitled to qualified immunity on this claim." Porter v. Pennsylvania Dep't of Corr., 974 F.3d 431, 449 (3d Cir. 2020).

The district court also denied the defendant's motion for summary judgment on Mayo's Eighth Amendment conditions of confinement claim set against the backdrop of this prolonged solitary confinement of an inmate who was known to be

4

mentally ill, albeit in a more succinct fashion, stating that: "Defendant fails to address the conditions of confinement claim in his motion. Hence, the claim will proceed to trial." (Id., at 10). The defendant then sought and obtained leave to file a second summary judgment motion, addressing the Eighth Amendment conditions of confinement claim that the district court found was not addressed in the first summary judgment motion. (Docs. 60, 76).

That motion is now ripe and pending before this court. (Doc. 78). In this second summary judgment motion the defendant advances a twofold argument, asserting first that the placement of Mayo, who was known to be a mentally ill inmate, in solitary confinement for more than five years did not significantly implicate the Eighth Amendment's prohibition against cruel and unusual punishment. Second, the defendant asserts that whatever Eighth Amendment rights Mayo had in this setting were not clearly established in 2018, when the plaintiff filed this lawsuit. Accordingly, the defendant insists that he is entitled to qualified immunity in this case.

For the reasons set forth below, we disagree. Instead, we find, as the district court previously concluded, that the defendant's Eighth Amendment argument, like his prior due process contention, "fails to address recent case law and the changing landscape of indefinite solitary confinement." (Id., at 15). Therefore, we recommend that this motion for summary judgment, (Doc. 78), be denied.

## II.   Discussion

### A. Motion for Summary Judgment – Standard of Review

The defendant has filed a second motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, which provides that the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Through summary adjudication, a court is empowered to dispose of those claims that do not present a "genuine dispute as to any material fact," Fed. R. Civ. P. 56(a), and for which a trial would be "an empty and unnecessary formality." Univac Dental Co. v. Dentsply Int'l, Inc., No. 07-0493, 2010 U.S. Dist. LEXIS 31615, at *4 (M.D. Pa. Mar. 31, 2010). The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Id., at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the non-moving party's claims, "the

non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006), accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322. Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249. There must be more than a scintilla of evidence supporting the non-moving party and more than some metaphysical doubt as to the material facts. Id., at 252; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

Moreover, a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist. Further, "only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment." Countryside Oil Co., Inc. v. Travelers Ins. Co., 928 F. Supp. 474, 482 (D.N.J. 1995). Similarly, it is well-settled that: "[o]ne cannot create an issue of fact merely by . . . denying averments . . . without producing

any supporting evidence of the denials." Thimons v. PNC Bank, NA, 254 F. App'x 896, 899 (3d Cir. 2007) (citation omitted). Thus, "[w]hen a motion for summary judgment is made and supported . . ., an adverse party may not rest upon mere allegations or denial." Fireman's Ins. Co. of Newark New Jersey v. DuFresne, 676 F.2d 965, 968 (3d Cir. 1982); see Sunshine Books, Ltd. v. Temple University, 697 F.2d 90, 96 (3d Cir. 1982). "[A] mere denial is insufficient to raise a disputed issue of fact, and an unsubstantiated doubt as to the veracity of the opposing affidavit is also not sufficient." Lockhart v. Hoenstine, 411 F.2d 455, 458 (3d Cir. 1969). Furthermore, "a party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions." Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985) (citing Ness v. Marshall, 660 F.2d 517, 519 (3d Cir. 1981)).

Finally, it is emphatically not the province of the court to weigh evidence or assess credibility when passing upon a motion for summary judgment. Rather, in adjudicating the motion, the court must view the evidence presented in the light most favorable to the opposing party, Anderson, 477 U.S. at 255, and draw all reasonable inferences in the light most favorable to the non-moving party. Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363 (3d Cir. 1992). Where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true. Id. Additionally, the court is not to decide whether the evidence unquestionably favors one side or the other, or to make credibility

8

determinations, but instead must decide whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. Anderson, 477 U.S. at 252; see also Big Apple BMW, 974 F.2d at 1363. In reaching this determination, the Third Circuit has instructed that:

> To raise a genuine issue of material fact . . . the opponent need not match, item for item, each piece of evidence proffered by the movant. In practical terms, if the opponent has exceeded the "mere scintilla" threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against the opponent, even if the quantity of the movant's evidence far outweighs that of its opponent. It thus remains the province of the fact finder to ascertain the believability and weight of the evidence.

Id. In contrast, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotation marks omitted); NAACP v. North Hudson Reg'l Fire & Rescue, 665 F.3d

It is against these legal benchmarks that we assess the instant motion for summary judgment.

## B. Emerging Eighth Amendment Standards Governing Claims of Prolonged Solitary Confinement

The Eighth Amendment to the United States Constitution provides that: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. This constitutional protection against cruel and unusual punishment has long been extended by the

courts to claims like those made here, challenging an inmate's conditions of confinement. On this score, "[w]hen an Eighth Amendment claim arises in the context of a challenge to conditions of confinement, we must determine if prison officials acted with 'deliberate indifference' to the inmate's health. Farmer v. Brennan, 511 U.S. 825, 8371 (1994). The objective inquiry is whether the inmate was 'denied the minimal civilized measure of life's necessities.' Hudson, 503 U.S. at 9, 112 S.Ct. 995." Fuentes v. Wagner, 206 F.3d 335, 345 (3d Cir. 2000). In this setting, the Eighth Amendment prohibits punishments inconsistent with "evolving standards of decency that mark the progress of a maturing society." Estelle v. Gamble, 429 U.S. 97, 102 (1976). Conditions of prison confinement violate the Eighth Amendment when they "deprive inmates of the minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981).

Over the past four decades, the evolving standards of decency which mark the progress of our maturing society have led to a more informed view regarding the harms inflicted upon inmates by prolonged solitary confinement, particularly when prison officials are dealing with inmates who they know suffer from mental illness. Initially, in 1988, the Court of Appeals suggested that extended solitary confinement of death row inmates, standing alone, did not violate the Eighth Amendment. Peterkin v. Jeffes, 855 F.2d 1021, 1028-29 (3d Cir. 1988). This holding in Peterkin,

10

however, has not withstood the test of time. Rather, the courts have come to a more mature and informed understanding of the harms caused by prolonged solitary confinement, particularly as it relates to mentally ill inmates.

This deeper understanding is reflected by the Court of Appeals' decision in Palakovic v. Wetzel, 854 F.3d 209 (3d Cir. 2017). In Palakovic, the appellate court was presented with an Eighth Amendment conditions of confinement claim lodged by the parents of a deceased prisoner, who had suffered from mental illness and had committed suicide while held in solitary confinement for protracted periods of time. Id. at 224. Thus, the allegations in Palakovic closely parallel those made here; namely, an Eighth Amendment conditions of confinement claim premised upon the prolonged solitary confinement of a mentally ill inmate.

The Court of Appeals held that these allegations stated an Eighth Amendment claim and in doing so:

> [A]cknowledge[d] the robust body of legal and scientific authority recognizing the devastating mental health consequences caused by long-term isolation in solitary confinement. In our recent decision, Williams v. Secretary of the Pennsylvania Department of Corrections, 848 F.3d 549 (3d Cir. 2017), we observed a growing consensus—with roots going back a century—that conditions like those to which [the mentally ill inmate] repeatedly was subjected can cause severe and traumatic psychological damage, including anxiety, panic, paranoia, depression, post-traumatic stress disorder, psychosis, and even a disintegration of the basic sense of self identity. Id. at 566–67. And the damage does not stop at mental harm: "Physical harm can also result. Studies have documented high rates of suicide and self-mutilation amongst inmates who have been subjected to solitary confinement. These behaviors are believed to be maladaptive

mechanisms for dealing with the psychological suffering that comes from isolation." Id. at 567–68 (citations omitted).

Palakovic, 854 F.3d at 225–26 (footnotes omitted). Therefore, the Third Circuit concluded that: "[c]onsidering these factual allegations in light of the increasingly obvious reality that extended stays in solitary confinement can cause serious damage to mental health, we view these allegations as more than sufficient to state a plausible claim that [the mentally ill inmate] experienced inhumane conditions of confinement to which the prison officials . . . were deliberately indifferent." Id. at 226. Thus, by 2017, the Third Circuit had clearly found that an Eighth Amendment conditions of confinement claim may lie when a mentally ill inmate is held in solitary confinement for prolonged periods of time.

The Third Circuit reaffirmed and extended this principle to solitary confinement conditions of confinement claims by state death row inmates in Porter v. Pennsylvania Dep't of Corr., 974 F.3d 431, 441 (3d Cir. 2020). Finding that such extended solitary confinement rose to the level of an Eighth Amendment violation, the Court of Appeals emphasized that:

> It is well established in both case law and scientific and medical research that prolonged solitary confinement, like that experienced [here], poses a substantial risk of serious psychological and physical harm:
>
>> A comprehensive meta-analysis of the existing literature on solitary confinement within and beyond the criminal justice setting found that "[t]he empirical record

compels an unmistakable conclusion: this experience is psychologically painful, can be traumatic and harmful, and puts many of those who have been subjected to it at risk of long-term ... damage." Specifically, based on an examination of a representative sample of sensory deprivation studies, the researchers found that virtually *everyone* exposed to such conditions is affected in some way. They further explained that "[t]here is not a single study of solitary confinement wherein non-voluntary confinement that lasted for longer than 10 days failed to result in negative psychological effects." And as another researcher elaborated, "all [individuals subjected to solitary confinement] will ... experience a degree of stupor, difficulties with thinking and concentration, obsessional thinking, agitation, irritability, and difficulty tolerating external stimuli."

Anxiety and panic are common side effects. Depression, post-traumatic stress disorder, psychosis, hallucinations, paranoia, claustrophobia, and suicidal ideation are also frequent results. Additional studies included in the aforementioned meta-analysis further "underscored the importance of social contact for the creation and maintenance of 'self.' " In other words, in the absence of interaction with others, an individual's very identity is at risk of disintegration.

...

As if psychological damage was not enough, the impact of the deprivation does not always stop there. Physical harm can also result. Studies have documented high rates of suicide and self-mutilation amongst inmates who have been subjected to solitary confinement. These behaviors are believed to be maladaptive mechanisms for dealing with the psychological suffering that comes from isolation. In addition, the lack of opportunity for free movement is associated with more general physical deterioration. The constellations of symptoms include dangerous weight loss, hypertension, and heart abnormalities, as well as the aggravation of pre-existing medical problems.

13

Williams, 848 F.3d at 566–68 (internal citations omitted) (alterations in original); see also Brief of Amici Curiae Professors and Practitioners of Psychiatry, Psychology, and Medicine at 1 ("[S]olitary confinement causes substantial harm to prisoners' mental and physical health. For prisoners subject to extreme lengths of solitary confinement, such as Appellant Porter here, such harm is inevitable.").

We have repeatedly recognized the severe effects of prolonged solitary confinement, as have our sister circuits and Justices of the Supreme Court. See Shoats v. Horn, 213 F.3d 140, 144 (3d Cir. 2000) (noting that a special assistant to the Secretary of the Pennsylvania DOC would be concerned about the psychological damage to an inmate after only 90 days of solitary confinement); Palakovic v. Wetzel, 854 F.3d 209, 225 (3d Cir. 2017) (acknowledging the "robust body of legal and scientific authority recognizing the devastating mental health consequences caused by long-term isolation in solitary confinement"); Porter v. Clarke, 923 F.3d 348, 355–56 (4th Cir. 2019) (holding that conditions on Virginia's death row violated the Eighth Amendment and noting that "[i]n recent years, advances in our understanding of psychology and new empirical methods have allowed researchers to characterize and quantify the nature and severity of the adverse psychological effects attributable to prolonged placement of inmates in isolated conditions"); Davis v. Ayala, 576 U.S. 257, 135 S. Ct. 2187, 2210, 192 L.Ed.2d 323 (2015) (Kennedy, J., concurring) ("[R]esearch still confirms what this Court suggested over a century ago: Years on end of near-total isolation exact a terrible price."); Glossip v. Gross, 576 U.S. 863, 135 S. Ct. 2726, 2765, 192 L.Ed.2d 761 (2015) (Breyer, J., dissenting) (reviewing literature and stating that "it is well documented that such prolonged solitary confinement produces numerous deleterious harms").

Id. at 441–43.

Accordingly, in light of Palakovic and Porter, currently "it is well-established in our Circuit that . . . prolonged solitary confinement satisfies the objective prong of the Eighth Amendment test and may give rise to an Eighth Amendment claim,

particularly where, as here, Defendants have failed to provide any meaningful penological justification." <u>Id.</u> at 451.

## C. **<u>The Defendant's Second Summary Judgment Motion Should Be Denied.</u>**

Judged against these legal benchmarks, the defendant's second summary judgment motion fails and should be denied. As we have noted, in this second summary judgment motion the defendants advances a twofold argument, asserting: (1) that the placement of Mayo, who was known to be a mentally ill inmate, in solitary confinement for more than five years, did not significantly implicate the Eighth Amendment's prohibition against cruel and unusual punishment; and (2) arguing that whatever Eighth Amendment rights Mayo had in this setting were not clearly established in 2018, when the plaintiff filed this lawsuit and therefore the defendant is entitled to qualified immunity.

We disagree. In our view, when this case is considered in the specific factual context of an inmate who is placed in prolonged solitary confinement even though he is known by prison officials to suffer from mental illness and is deemed by prison officials to be a suicide risk, both of these arguments fail.

Turning first to the defense contention that the solitary confinement of Mayo, a mentally ill inmate, for 5 ½ years does not implicate the Eighth Amendment's prohibition against cruel and unusual punishment, this claim now runs afoul of the "evolving standards of decency that mark the progress of a maturing

society." Estelle v. Gamble, 429 U.S. 97, 102 (1976). In particular, given the deep and mature understanding of the potentially devastating psychological and physical effects of extended solitary confinement which has been repeatedly voiced by the Court of Appeals since 2017, this claim fails because  "it is well-established in our Circuit that . . . prolonged solitary confinement satisfies the objective prong of the Eighth Amendment test and may give rise to an Eighth Amendment claim, particularly where, as here, Defendants have failed to provide any meaningful penological justification." Porter, 974 F.3d at 451.

For his part, the defendant attempts to avoid the impact of this longstanding line of legal authority which holds that prolonged solitary confinement violates the Eighth Amendment by arguing that Mayo's 5 ½ years of solitary confinement is not sufficiently prolonged to trigger constitutional scrutiny. This argument that 5 ½ years of solitary confinement are constitutionally insignificant is unavailing and has, in fact, been rejected by the Court of Appeals. Indeed, as the appellate court has explained, far shorter periods of solitary confinement for mentally ill inmates has been found sufficient to state an Eighth Amendment conditions of confinement claim. For example, in Talley v. Clark, 851 F. App'x 306, 310 (3d Cir. 2021), the Court of Appeals was presented with an Eighth Amendment claim by a mentally ill inmate who alleged that he had been held in solitary confinement for 13 months. On

appeal, the defense argued that this 13 month period was too short to trigger any Eighth Amendment liability.

Relying upon its prior holding in <u>Palakovic</u>, the Court of Appeals disagreed, stating that:

> We have held that a prisoner stated an Eighth Amendment claim against Pennsylvania officials—including Secretary Wetzel—who were responsible for giving him "multiple 30-day stints in solitary confinement" over the course of 13 months despite knowledge of his significant mental health problems. <u>Palakovic v. Wetzel</u>, 854 F.3d 209, 216–217, 226 (3d Cir. 2017). We emphasized "the robust body of legal and scientific authority recognizing the devastating mental health consequences caused by long-term isolation in solitary confinement." <u>Id</u>. at 225. These "increasingly obvious" risks; the defendants' alleged knowledge of the plaintiff's mental health issues; and his claims about the defendants' awareness of suicides and self-harm by other solitary prisoners—along with a subsequent U.S. Department of Justice investigation of the plaintiff's facility—allowed his claim to survive . . . .

<u>Talley</u>, 851 F. App'x at 310.

If 13 months of solitary confinement for a mentally ill inmate is sufficiently grave to satisfy the objective element of an Eighth Amendment claim, then it follows that Mayo's 5 ½ years in solitary confinement are also sufficient to state a constitutional claim. Therefore the defense argument that these years of isolation are constitutionally insignificant fails.

In the alternative, the defendant asserts that he is entitled to qualified immunity from damages because these Eighth Amendment benchmarks were not clearly established at the time that this lawsuit was filed in 2018. In our view, when

Mayo's claims are considered through the proper analytical lens and are examined as Eighth Amendment prolonged solitary confinement claims involving a mentally ill inmate, this contention also fails.

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." Reichle v. Howards, 566 U.S. 658, 664 (2012). A qualified immunity analysis involves two questions: whether the official violated a statutory or constitutional right, and whether that right was clearly established at the time of the challenged conduct. Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011). Lower courts have the discretion to decide which question to analyze first. Pearson v. Callahan, 555 U.S. 223, 236 (2009). The Supreme Court has cautioned courts to "think carefully before expending scarce judicial resources to resolve difficult and novel questions of constitutional or statutory interpretation that will have no effect on the outcome of the case." Id. (internal quotations omitted); see also al-Kidd, 563 U.S. at 735.

An official's conduct violates clearly established law when, "at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would [have understood] that what he is doing violates that right.'" al-Kidd, 563 U.S. at 741 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). The Supreme Court has stated that this standard does not require a case

directly on point but requires that "existing precedent must have placed the statutory or constitutional question beyond debate." al-Kidd, 563 U.S. at 741. "When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law." Id. at 743 (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)); see also Taylor v. Barkes, 135 S. Ct. 2042, 2044 (2015).

The dispositive question that the court must ask is "whether the violative nature of *particular* conduct is clearly established." Mullenix v. Luna, 136 S. Ct. 305, 308 (2015) (quoting al-Kidd, 563 U.S. at 742). The inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." Id.; see also Davenport v. Borough of Homestead, 870 F.3d 273, 281 (3d Cir. 2017). This "clearly established" standard ensures that an official can reasonably anticipate when his or her conduct may give rise to liability, and "protects the balance between vindication of constitutional rights and government officials' effective performance of their duties." Reichle, 566 U.S. at 664. Further:

> In conducting the inquiry into whether a right is clearly established, we look first for applicable Supreme Court precedent. If none exists, we consider whether there is a case of controlling authority in our jurisdiction or a robust consensus of cases of persuasive authority in the Courts of Appeals that could clearly establish a right for purposes of qualified immunity.

> Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist., 877 F.3d 136, 142 (3d Cir. 2017) (internal citations, quotation marks, and alterations omitted).

Porter, 974 F.3d at 449.

Applying this analytical framework, we begin by identifying what is the most closely analogous factual context for this particular Eighth Amendment claim. On this score, the answer is evident: Mayo's case entails a claim that the prolonged solitary confinement of an inmate who was known by prison officials to be mentally ill and potentially suicidal violated the Eighth Amendment. Viewed in this light, the obvious precedential parallel to Mayo's claim is the Third Circuit's decision in Palakovic—a 2017 precedential decision which held that placement of a mentally ill inmate in solitary confinement for some 13 months stated a valid Eighth Amendment claim. Thus, the controlling case law in this circuit at the time that Mayo filed this complaint in 2018 stated that this type of extended solitary confinement of mentally ill prisoners potentially constituted an Eighth Amendment violation.

Moreover, the Court of Appeals' recent decision in Porter does not compel a contrary result here. As we have noted, in Porter, the appellate court extended the rationale in Palakovic, which had applied to prolonged detention of mentally ill inmate facing non-capital sentences, and applied that rationale to solitary confinement claims made by a death row inmate.

While the Court in Porter found such prolonged solitary confinement for a death row inmate to be violative of the Eighth Amendment, it also concluded that, as to death row inmates, the law had not been clearly established in 2017, and

conferred qualified immunity upon prison staff in this particular setting. Porter, 974 F.3d at 450. However, in following this course, the Court of Appeals emphasized that the status of mentally ill inmates subjected to prolonged solitary confinement had been much more clearly defined by its prior decision in Palakovic. As the Court explained:

> In [Palakovic] the plaintiff had committed suicide in solitary confinement. He was not on death row. The plaintiff's family alleged that he had preexisting serious mental health problems that the prison had diagnosed. Even so, prison officials repeatedly placed him in solitary confinement. Considering the plaintiff's particular vulnerability in light of the known dangers of solitary confinement, we held that the plaintiff had stated an Eighth Amendment claim. Id. at 225–26. Although the Palakovic decision certainly acknowledges the dangers of solitary confinement, that the plaintiff was not on death row and had specific known mental health issues pre-assignment to solitary confinement distinguishes Palakovic from Porter's case.

Porter, 974 F.3d at 450. Thus, the decision in Porter actually reaffirmed the clear precedential status of the court's prior 2017 ruling in Palakovic, holding that the Palakovic decision certainly, and clearly, acknowledged the dangers of solitary confinement for mentally ill inmates. Given this longstanding recognition of the gravity of prolonged solitary confinement for this class of prisoners which has been firmly rooted in decisional case law since 2017, the defendant's qualified immunity claim fails. This Eighth Amendment conditions of confinement claim, therefore, should also proceed to trial.

## III.    <u>Recommendation</u>

Accordingly, for the foregoing reasons, IT IS RECOMMENDED THAT the defendant's second motion for summary judgment (Doc. 78) be DENIED.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 24th day of August 2021.

<u>S/ Martin C. Carlson</u>
Martin C. Carlson
United States Magistrate Judge